ODOM, Justice.
 

 Plaintiff, a civil engineer, sued defendant, the Town of Franklinton, to recover $6,447.43, alleged to be due him for professional services rendered in connection with the building and installation of a sanitary sewerage system for the town. He alleged that the work was done under contract entered into by him with the mayor and board of. aldermen, and that in the alternative, if the court should find that he had no formal contract with the town, he should be paid a reasonable sum for the services he rendered, which services, he alleged, were well worth the sum demanded.
 

 The town in its answer denied that it had entered into a formal contract with plaintiff in connection with the building and installation of the sewerage system, and denied that plaintiff had rendered any services for which he should be paid. It prayed that plaintiff’s demands be rejected and that his suit be dismissed at his costs.
 

 There was judgment in favor of plaintiff for $800.00 on a quantum meruit basis, and he appealed and now prays that the above amount be increased to $3,223.72, one-half the amount demanded originally. Defendant did not answer the appeal.
 

 Plaintiff’s counsel now admit, as held by the trial judge, that he failed to prove that he entered into a formal contract with the town for the payment of any stipulated sum for the services which he claims he rendered for it. But the judge was of the opinion that plaintiff rendered valuable services in connection with the building and installation of the sewerage system, which services had been accepted by the town, and that the town was liable for the value thereof, which he placed at $800. The only question we are called upon to decide is whether plaintiff’s services were worth more than the amount allowed, and that is a question of fact.
 

 While defendant in its answer denied that it owed plaintiff anything, its failure to answer the appeal is equivalent to an admission that it owes him at least $800, the amount of the judgment rendered against it.
 

 The record discloses that, about 1930, at the time Federal funds became available for the building of such projects as water and sewerage systems for municipalities, J. B. McCrary & Company interviewed the
 
 *396
 
 Mayor and Board of Aldermen of the Town of Franklinton with the view of inducing the town to install a new and complete combined water and sewerage system for the town, suggesting that a large grant could be obtained from the Federal government for that purpose. The project was looked upon with favor by the town, and McCrary & Company was authorized to do what was necessary in order to obtain the grant. McCrary & Company made a survey of the town and made estimates of the cost of the work, and submitted them to the proper Federal authorities. It was agreed that McCrary & Company would receive no compensation for its services unless and until the project itself was completed, and, in the event it was completed, it would be paid the usual engineering compensation on projects of this kind.
 

 The Federal authorities declined to contribute to the installation of a .combined water and sewerage system, but did approve the building . and equipping of a water system as a PWA project. The water system was undertaken, and comr pleted under the supervision,, .of McCrary & Company, but nothing was then done about the sewerage system.
 

 Subsequently, Blakewood, the plaintiff in this case, approached the mayor and board of aldermen with the proposition that he could induce the Federal authorities to approve the building of a separate sanitary sewerage system for the town as a WPA project. There is conflict between the testimony of the plaintiff and that of the mayor and the members of the board as to what compensation should be paid plaintiff in case he was successful in his efforts to induce the WPA to take over the project. Plaintiff testified that the understanding was that he should make all the surveys, plats, and blue prints necessary, and that he should furnish estimates as to the cost of the project, make formal, application to the WPA with all supporting data necessary, and that, if the project was approved, then he should supervise the work and receive as compensation 7 per cent of the cost. While the mayor and other witnesses for the town testified that no specified sum was agreed upon, they do admit that such a fee was discussed, and they admit that plaintiff did present on behalf of the town an application to the WPA for the grant, together with all the necessary supporting data, which application was signed by the mayor representing the town. The testimony shows beyond question that the application was approved by the WPA and that it was specified that the work should be done under the supervision of the plaintiff as consulting engineer.
 

 About the time the application was approved, there was a municipal election held, which resulted in the defeat of the mayor and board of aldermen in office at the time this project was sponsored by the town and approved by the WPA, and a new set of municipal officers was elected. Whether this change in administration brought about the results or not is not disclosed by the record, but the facts are that plaintiff1 did not supervise the building of the sanitary sewerage system, the construction work being done under the supervision of
 
 *398
 
 another engineer employed by the new administration.
 

 It seems to be the theory of the present municipal administration that plaintiff is not entitled to remuneration for the services which he rendered because he was not retained to supervise the construction as consulting engineer. The trial judge rejected this theory, and correctly, because it was not plaintiff’s fault that his services were not continued. The judge held, and correctly, that, while plaintiff failed to prove that he had formal contract with the town specifying any certain sum for his services in preparing the necessary data and in getting the application approved, yet the town had accepted his work and had been benefited by it, and that plaintiff was therefore entitled to compensation. ,
 

 The testimony shows that the usual fee for getting up data, making all blue prints, plans, specifications, and estimates for the building of projects of this kind, where the work is finally done under the supervision of the consulting engineer, is 7 per cent of the cost of the project, and that a fee of 3% per cent is customary in cases where the actual work is not supervised by the engineer who had prepared the data and gotten the application approved. On this basis, plaintiff would be entitled to 3% per cent of the cost of the project, which was about $90,000. Plaintiff, not having supervised the construction of the sanitary sewerage system, now contends that he is entitled to receive at least 3% per cent of the cost as his fee.
 

 The reason for defendant’s argument that plaintiff is not entitled to receive that much is that, in making up the supporting data to accompany the application to the WPA, he made use of the plans, specifications, data, etc., prepared by McCrary & Company for the construction of the proposed combined water and sewerage system, and that as a matter of fact plaintiff rendered but little service in connection with the construction of the sanitary sewerage system. The present mayor of the town testified that plaintiff literally copied and made use of the maps, blue prints, estimates, etc., prepared by Mc-Crary & Company. Just what personal knowledge the mayor had touching this point he did not explain. The impression we get from his testimony is that he merely assumed this to be true.
 

 On the contrary, while plaintiff admitted that he visited the PWA office in the City of New Orleans, accompanied by the present mayor and city attorney of Franklin-ton, and that he there saw a map of the tpwn made by McCrary & Company, which disclosed certain data, all of which assisted him to some extent in making his own plans and specifications, he testified positively that this was the only information and assistance which he received from the work done by McCrary & Company. He said positively that he made his own blue prints, made all calculations and all estimates necessary to be submitted to the WPA authorities in order to get the project approved; that all this was his original work and that as a matter of fact the information which he obtained from McCrary & Company’s map was of very little assistance to him in submitting the
 
 *400
 
 application to the WPA and having it approved.
 

 Defendant offered no satisfactory evidence to contradict plaintiff’s testimony as to this point. If, as a matter of fact, the supporting plans, specifications, estimates, and data which plaintiff attached to his application to the WPA were the work of McCrary & Company, copied by plaintiff, it is reasonable to assume that defendant could have made that proof by calling Mc-Crary’s engineers as witnesses, but it failed to do so.
 

 Mr. Mundinger, a civil engineer, testified that plaintiff’s services to the town were worth about $3,200. The way he arrived at this figure was that the fee usually paid consulting engineers for making the plans, blue prints, specifications, etc., and getting the project accepted, and for supervising the work of construction is 7 per cent of the cost of the project, which in this case was $90,000, and that, where the engineer does all the work except the supervision of construction, he is entitled to one-half that amount. However, he knew nothing about what information and assistance plaintiff had received from the Mc-Crary survey.
 

 We are satisfied that the McCrary map and survey were of some assistance to the plaintiff, and that the town should not be required to pay the full amount which plaintiff would be entitled to receive if he had done the work unassisted by the data thus obtained.
 

 Plaintiff testified that the actual cost and expense to him of the work which he did was $1,800, and that at one time he had offered to settle with the town for that amount.
 

 In cases of this kind, it is impossible for courts to determine the exact value of such services. In fixing the amount of the judgment, the court must necessarily take into consideration all the facts' and circumstances surrounding the particular case and must award a sum which, in its best judgment, would be fair and equitable to the parties concerned. We think an award of $1,800 would be just and equitable in this case.
 

 For the reasons assigned, the judgment appealed from is amended so as to increase the amount of the award from $800 to $1,800, and as thus amended the judgment is affirmed; defendant to pay costs.