[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 762 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 763 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 764 
The Louisiana Metal Culvert Company, a partnership composed of James Thomas and Leslie G. Boxwell, sold and delivered, in a number of separate transactions, certain materials to the Louisiana Highway Commission between January 11, 1940, and June 24, 1940, both dates inclusive. Many of the invoices, there being one for each sale and twenty in all, disclose prices charged in excess of $500.
In connection with most of the sales, and in lieu of payment, the Commission *Page 765 
issued its warrants to the Louisiana Metal Culvert Company redeemable on or before December 31, 1940, and bearing 4% per annum interest from date of issuance until paid.
The Louisiana Metal Culvert Company was dissolved on January 17, 1942, and its claim against the Commission transferred and assigned to Leslie G. Boxwell and Charles Vernon Baker.
These assignees bring this suit against the Department of Highways of the State of Louisiana, which is the successor to the Louisiana Highway Commission, asking judgment for $28,665.82, the total amount allegedly due and owing under the sales.
The main demand is based on the described warrants and on open accounts for which no warrants were issued. Alternatively, in the event recovery be not allowed on the warrants, plaintiffs sue on open accounts for all of the sales. And in the further alternative, they seek judgment for the total amount on a quantum meruit basis, the allegations supporting this demand being that the Commission accepted and used all of the materials. Additionally, estoppel is pleaded.
Defendant filed exceptions of vagueness, inconsistency, immateriality, no cause of action and no right of action. After all of these had been overruled it answered denying generally the allegations of the petition.
As a special defense defendant pleads that the sales, except those for prices less than $500, were illegal, null and void because of their having been made without *Page 766 
advertisement and competitive bidding as required by Act No. 73 of 1926, as amended by Act No. 20 of 1935, 4th Ex.Sess.
A trial of the merits resulted in a judgment for plaintiffs as prayed for. The judge, as his written opinion discloses, concluded that the warrants are not negotiable in that they are payable out of a particular fund and cannot form the basis of a legal demand. But he found that the materials were actually sold and delivered to the Commission and presumably were used by it; and he held that defendant is estopped to plead the illegality of the sales, the benefits of which it and its predecessors had accepted.
Defendant appealed from the judgment.
Of the many exceptions filed, that of inconsistency is the only one urged here; the others have been abandoned. Under it the argument is advanced that the three separate and different demands contained in plaintiffs' petition are inconsistent and cannot be cumulated in the same suit in view of Code of Practice, Article 149. This article states in part that a plaintiff is not allowed to cumulate several demands in the same action when one of them is contrary to or precludes another.
If plaintiffs were attempting to recover on more than one of their demands there would certainly exist a violation of that procedural provision. But such is not the case. The petition alleges a single set of facts constituting the cause of action, and from these there are drawn in the alternative three conclusions, under only one of which recovery is asked. This method *Page 767 
is not objectionable. Dilzell Engineering Construction Company v. Lehmann, 120 La. 273, 45 So. 138; Haas v. McCain, 161 La. 114,108 So. 305; Mentz v. Village of Mamou, 165 La. 1070,116 So. 561; Blakewood v. Town of Franklinton, 195 La. 391, 196 So. 909; Thibodeaux v. Falcon, La. Court of Appeal, 197 So. 206.
The case of Succession of Piffet, 37 La. Ann. 871, holds, as appellant states, that where a plaintiff declares on an express contract he cannot recover on quantum meruit, the two being inconsistent. However, it is to be noticed that the claimant therein, instead of pleading his demands alternatively, elected to stand on the contract. For this reason the holding is not pertinent here.
The exception of inconsistency, we think, was correctly overruled.
The record supports the trial court's finding that no fraud attended the making of the several sales. It further shows, as the court held, that all of the materials allegedly sold were actually delivered to the Highway Commission. To this effect is the testimony of its employees who received the greater part of them; while as to the remaining portion there was offered and filed in evidence documents bearing the written receipts of persons then in the Commission's employ. Also the described warrants, affecting more than 90% of the sales, are evidence of the delivery.
Then too, we agree with the district court that the warrants given by the Commission cannot form the basis of a legal demand. They are payable out of a *Page 768 
particular fund, and hence are not negotiable instruments. Sections 1 and 3 of Act No. 64 of 1904. Merely evidence of the obligations for which they were executed and given is the only legal status that they enjoy.
As above stated, some of the sales were for agreed prices of less than $500 and not violative of the statutory provisions invoked by defendant. Respecting these, unquestionably plaintiffs are entitled to and must have judgment for the full amounts charged. And on the ones evidenced by warrants interest at the rate of 4% per annum from the date of the respective warrants until paid is due.
It is generally held that a state or its agencies cannot be compelled to pay interest upon unpaid accounts unless provision is made therefor by stipulation or by a specific statute; general laws relative to the payment of interest are not applicable. State ex rel. Shaw v. Police Jury of Catahoula Parish, La.Court of Appeal, 167 So. 754, and Sholars v. Louisiana Highway Commission, La.Court of Appeal, 6 So.2d 153. In R.C.L. (verbo Interest), § 14, the following is said:
"It is well settled, both on principle and authority, that a state cannot be held to the payment of interest on its debts unless bound by an act of the legislature or by a lawful contract of its executive officers made within the scope of their duly constituted authority. This principle applies to bonds, claims, judgments and warrants. The theory upon which the rule is based is that whenever interest is allowed either by statute or by common law, except in cases *Page 769 
where there has been a contract to pay interest, it is allowed for delay or default of the debtor. But delay or default cannot be attributed to the government. It is presumed to be always ready to pay what it owes. The apparently favored position of the government in this respect has been declared to be demanded by public policy. A county is generally regarded as but an arm or agent of the state, and not liable for interest, in the absence of an express agreement to pay it. * * *."
There is no such specific statute in this state; however, the warrants stipulate and contract for the payment of the mentioned interest.
The matter of recovery for those sales involving prices in excess of $500 admits of serious debate. When they were consummated there was in force and effect Act No. 73 of 1926, as amended by Act No. 20 of 1935, 4th Ex.Sess., the pertinent portion of which reads as follows:
"Section 1. Be it enacted by the Legislature of Louisiana, That all public work to be done, exceeding the sum of five hundred dollars, by any parochial, municipal or other public corporation or political subdivision of the State, or for the purchase of materials or supplies, to be paid for out of public funds, shall be advertised and let by contract to the lowest responsible bidder; provided, that such advertisement, in case of contracts to be let exceeding five hundred dollars and less than one thousand dollars, shall be advertised for not less than once a week for two weeks; and all such contracts to be let exceeding one thousand dollars shall be advertised for not *Page 770 
less than once a week for three weeks; provided further, that contracts to be let for such work, or for purchases of materials or supplies, aggregating less than five hundred dollars, shall not be advertised unless the governing authority having control thereof shall deem it advisable; and provided further, that the procedure herein shall not be necessary in cases of extreme public emergency or for labor necessary and used in the maintenance of public works built and completed.
* * * * *
"Section 3. That when any bid or bids shall be accepted for the purchase of materials or supplies, or for the construction or doing of any public works, a written contract shall be entered into by the successful bidder and the governing authority letting the same, and the party to whom the contract is awarded shall furnish good and solvent bond in an amount not less than one-half of the amount of the contract, for the faithful performance of his duties.
* * * * *
"Section 5. That any purchase of materials or supplies, or any contract entered into for the construction of public works, contrary to the provisions of this Act shall be null and void."
This statute in so far as it requires advertising and the obtaining of competitive bids is a prohibitory law founded on public policy. It was enacted in the interest of the taxpaying citizens and has for its purpose the protecting of them against contracts of public officials entered into because of favoritism and involving *Page 771 
exorbitant and extortionate prices. It was not passed for the benefit of the officials and the entities which they represent.
A contract made in violation of that statutory requirement is wholly illegal. According to the great weight of authority, it is unenforceable even though the work has been performed or materials furnished; neither can recovery be had on a quantum meruit basis. In this connection, it is said in 43 American Jurisprudence (verbo Public Works and Contracts), § 95, that:
"It is well established that no recovery can be had by a contractor for the construction of a public improvement or other contract with a public body made by public authorities without compliance with the provisions of law requiring letting of such contracts upon competitive bidding, even though such contract is duly executed and signed and the work has been executed in accordance with its terms. Not only is the contract itself illegal and unenforceable, but the general rule is that there is no implied liability on the part of the municipality or other public body with which such contract was attempted to be made for work to be done or materials furnished pursuant thereto, for the reasonable value of the services or materials, even though the public body has received the benefits of such performance. These provisions exist to protect citizen taxpayers from unjust, ill-considered or extortionate contracts, or those showing favoritism, and if the public body is suffered to disregard them and the other party permitted to recover upon an implied contract, such provisions can always be evaded and set at *Page 772 
naught. To depart from these principles would be to open the door to abuses and practices fraught with danger to the welfare of the citizens and taxpayers of municipalities and political subdivisions of the state."
In the early case of Fox v. City of New Orleans, 12 La.Ann. 154, 68 Am.Dec. 766, recovery was denied to a plaintiff who had furnished labor and materials to the City of New Orleans in contravention of a statute requiring that all contracts for public or other works ordered by the municipality be let out to the lowest bidder at public auction. The reasons given for this holding were that: "No action can be maintained upon a contract made in violation of law. If, by overriding this statute, the Municipal officers could saddle the city with the expenses of the contracts they choose to make in defiance of its mandates, the taxpayers would become an easy prey to the jobbing contracts which it was the commendable object of the statute to defeat."
The Fox case was referred to approvingly in a number of later decisions of this court.
In the brief of plaintiffs' counsel the following is found: "It was established and admitted that the sales involved in this suit were made without advertisement and without competitive bidding as provided by law." This being true, those sales involving prices in excess of $500 were clearly null and void; and under the view taken by most of the courts throughout the United States, including that expressed by us in the Fox case, no recovery whatever is permissible. *Page 773 
If the transactions in question were malum in se, that is, essentially and inherently evil and committed contrary to the principles of natural, moral and public law, we would have no hesitancy in following the stated view. But they were not. There was nothing inherently immoral or evil about them. Their illegality resulted because they were expressly forbidden by positive law. They were malum prohibitum. The contracts being merely malum prohibitum, and not malum in se, and in view of the other circumstances hereinafter pointed out, we are forced to a conclusion that constitutes a slight departure from the doctrine of the Fox case and one that is not entirely in keeping with the expressed prevailing view.
The evidence discloses the existence of no fraud on the part of either the Louisiana Metal Culvert Company or the Highway Commission in the consummation of the sales. Furthermore, both parties were equally guilty in failing to respect the mandate of the statute — the vendee neglecting to advertise for bids and the vendor selling and delivering its merchandise in the regular course of business. Also, the materials were received and accepted by the Commission; and it used them for the benefit of itself and of the people represented.
Under these circumstances it would clearly be unjust to permit the Commission to reap the mentioned benefits and escape liability for them altogether. There is imbedded deeply in our civil law the maxim that no one ought to enrich himself at the expense of another. Revised Civil Code, Article 1965. On the other hand, considering *Page 774 
the law's expressed prohibition for making the sales in the manner shown it would also be improper for the vendor to profit by the transactions.
Equity would favor, we think, the placing of the parties in the positions that they occupied prior to the carrying out of their engagements, or in other words in status quo; but, of course, this is impossible because of the materials having been used. The only alternative is to compel payment by the vendee, or its successor, of an amount that represents the materials' actual cost to the vendor, without allowing any profits on or expenses connected with the sales.
This alternative we have decided to follow herein; and, with respect to those sales exceeding $500, defendant will be and it is condemned to pay to plaintiffs the amount mentioned under that alternative. To determine that amount the case will have to be remanded to the district court. No interest thereon is to be granted, both the sales and the warrants evidencing them being null and void.
An enforced settlement of this kind not only does justice and equity between the parties, but also it provides the protection to the taxpayers that the statute under consideration contemplates. At the same time it is notice to contractors and furnishers of materials that their dealings in the future with public agencies must be conducted in accordance with the law's provisions; otherwise the anticipated profits and attendant expenses will be denied them and their efforts will go for naught. *Page 775 
If it were possible to restore in kind the merchandise furnished by the vendor, the ordering of restoration would undoubtedly be proper. Most of the courts throughout the United States sanction such a settlement. In 43 American Jurisprudence (verbo Public Works and Contracts), § 97, we find:
"* * * It is well established that under a contract which is invalid, but not fraudulent or malum in se, pursuant to which the contractor has furnished to a municipality or other political subdivision property, whether enhanced by his own labor or not, which the public fails to pay for, he may upon equitable terms recover it in species, if recovery may be had without material injury to other property and without causing the public any inconvenience other than results from depriving it of that to which it has no just claim, and in some instances contractors have, in addition to the recovery of the property itself, been allowed to recover the reasonable value of its use while in possession of the public. * * *"
When the materials cannot be restored in kind, as in the instant case, there seems to be no good reason why the method furnished by the above stated alternative should not be followed.
The trial court, in allowing recovery for the full amount of the claim, sustained plaintiffs' plea of estoppel, acting primarily on the authority of Burk v. Livingston Parish School Board, 190 La. 504, 182 So. 656. That decision, together with many others by this court that cited it approvingly, especially Louisiana et al. v. McIlhenny *Page 776 
et al., 201 La. 78, 9 So.2d 467, is relied on by counsel for plaintiff. All of the cited cases can be distinguished, we think, from the instant controversy; however, we shall discuss only the named two.
In the Burk case the plaintiff furnished services and materials to defendant under a contract that was not in writing as the law required. No question relative to the awarding of the work by competitive bidding was involved. Defendant, it was held, could not successfully urge the nullity of the verbal contract, the court observing that the performance of the work, along with part payment of the price, operated as an estoppel. It is noticed that the asserted nullities in the Burk case and in the instant matter result from violations of provisions, although different ones, of said Act No. 73 of 1926, as amended. But there the nullity was only relative in character, that is, such as could be ratified and about which estoppel would lie. The requirement that the contract be in writing is primarily in the interest of individuals, the contracting parties; and the public generally is not necessarily interested in its enforcement. If the verbal agreement be legally entered into injury would not result from its execution.
A different kind of nullity, however, exists here. A statutory provision founded on public policy and enacted for the protection of the taxpayers has been violated, producing a nullity absolute in character, void ab initio.
Persons cannot by their contracts "derogate from the force of laws made for the preservation of public order *Page 777 
or good morals." Revised Civil Code, Article 11. "This court has differentiated between absolute nullities in derogation of public order and good morals and those which are established in the interest of individuals. The latter nullities are susceptible of ratification, either expressly or impliedly, and may be prescribed against, while the former are never susceptible of ratification and can never be prescribed against. Vaughan v. Christine, 3 La.Ann. 328; Ackerman v. Larner, 116 La. 101, 40 So. 581; Doucet v. Fenelon, 120 La. 18, 44 So. 908; Barnes v. Barnes,155 La. 981, 99 So. 719; and Succession of Henderson,195 La. 665, 197 So. 267." Whitney National Bank of New Orleans v. Mrs. Anna Schwob, widow of F.T. Bosworth, 13 So.2d 782. (Decided by this court but not yet reported [in State report]). Furthermore, the doctrine of estoppel has no application to those absolute nullities. Kelly v. Kelly, 131 La. 1024, 60 So. 671; Gauthreaux v. Harang, 190 La. 1060, 183 So. 349.
In the case of Louisiana v. McIlhenny, referred to supra, plaintiffs sued to recover funds paid to the defendants in fulfillment of a contract for landscaping grounds of various educational institutions. The suit was grounded on the contention that the contract was null and void, it not having been awarded on competitive bidding as required by the statute under discussion. The demands of plaintiffs were rejected, the basis of the decision being that the relied on statutory provisions were not applicable as the contract required services of a professional nature and called for technical skill of a high degree. But those *Page 778 
provisions are applicable here, thus differentiating the two cases. What we said therein on the question of estoppel was wholly unnecessary for a decision; hence, it was merely obiter dictum.
For the reasons assigned, the judgment appealed from is reversed and set aside, and the case is remanded to the district court for further proceedings in accordance with law and consistent with the views herein expressed. Costs of this appeal shall be paid by plaintiffs while all other costs shall abide the final determination of the cause.
ODOM, J., absent.