JONES, Judge.
This is an action by the City of New Orleans acting through the Public Belt Railroad Commission for the City of New Orleans against the Department of Highways of the State of Louisiana. In order that a clear understanding of the issues may be had, it is necessary to recapitulate the facts giving rise to the instant law suit.
On November 5, 1932, a contract for the construction of the Huey P. Long Bridge over the Mississippi River at New Orleans, Louisiana, was entered into. This agreement, which for the sake of brevity we will hereinafter refer to as “bridge contract”, was entered into by and between: (1) The State of Louisiana acting through the State Advisory Board by authority of Act No. 3 of Extra Session of 1930, an amendment to the Constitution of the State of Louisiana; (2) The City of New Orleans, acting through the Public Belt Railroad Commission by authority of Act 154 of 1928, an amendment to the Constitution of the State of Louisiana; (3) Morgan’s Louisiana and Texas Railroad and Steamship Company; (4) Texas and New Orleans Railroad Company; and (5) Southern Pacific Company. Neither the Department of Highways, which was not then in existence, nor its predecessor, the late Louisiana Highway Commission, was a party to the Bridge Contract. Under the provisions of the bridge contract, the State of Louisiana agreed to contribute toward the construction of said bridge and approaches the sum of $7,000,000. In conformity with the provisions of the bridge contract, on December 30, 1932, an “indenture” was executed by the City of New Orleans in favor of the Hibernia Bank and Trust Company, as trustee, securing the “City of New Orleans Public Belt Railroad Bridge Revenue 5% Gold Bonds”. The State of Louisiana was not a party to the indenture, nor was the Department of Highways or its predecessor, the Louisiana Plighway Commission.
Under the provisions of the bridge contract, the bridge to be constructed was a combination bridge planned for both rail and highway service, the railroad section thereof to provide a double track line over the bridge and the approaches thereto. The contract further provides that:
“All expenditures for maintenance and repair directly applicable to the railroad section of said bridge and approaches shall be borne by ‘Public Belt’, and all expenditures for maintenance and repair directly applicable to the highway section of said bridge and approaches shall be borne by ‘State’ as a part of its Highway System. It shall be the joint duty of ‘State’ and ‘Public Belt’ to maintain and keep in repair all those portions of said bridge and approaches not coming within the foregoing definitions of highway section and railroad section respectively, such maintenance and repair to be at all times accomplished by ‘State’ and ‘Public Belt’ in an efficient and economical manner, ‘State’ to assume and pay forty per cent. (40%) of such maintenance and repair and ‘Public Belt’ sixty per cent. (60%) thereof.”
The bridge contract, which was executed in 1932, was, of necessity, entered into before the construction of the bridge.
It appears from the record that in about 1936, the State of Louisiana and the City of New Orleans decided that it would be better and more economical for one of them to do all of the maintenance and repair of the bridge, rather than handling the matter jointly. Accordingly, on July 1, 1936, *647 another contract, designated as the “joint maintenance contract”, was entered into. The parties to the contract are: (1) The State of Louisiana, acting through the State Advisory Board; (2) The City of New Orleans, acting by and through the Public Belt Railroad Commission for the City of New Orleans; and the Louisiana Highway Commission, which was the predecessor of the Department of Highways. The joint maintenance contract provides that the City of New Orleans, through its Public Belt Railroad Commission, shall perform all maintenance and repair on the bridge and that the State, through the Louisiana Highway Commission, shall pay to the Public Belt Railroad Commission in equal monthly installments, so long as the agreement remained in effect, the sum of $28,045 per annum, “which payment shall be in lieu of any amount payable by the State pursuant to the Bridge Contract for the maintenance and keeping in repair of any part of the bridge and for any insurance on the bridge”.
The contract further provides as follows:
“3. It is recognized by the parties hereto that the amount to be paid by the Highway Commission pursuant to Section 2 of this agreement was arrived at by estimates which may prove to be too high or too low. Accordingly, the right is reserved to any party hereto at any time to seek an amicable agreement with the other parties for reducing or increasing, as the case may be, the monthly amount paid by the Highway Commission. If such agreement results in a reduction of the amount payable by the Highway Commission, there shall be no refund by the Public Belt but the amount to be paid by the Highway Commission in the future shall be adjusted in such fashion as to take into consideration the amount which the Highway Commission may have overpaid in the past; similarly if such agreement results in increasing the amount paid by the Highway Commission, there shall be no lump sum payment by the Highway Commission for the past period, but the amount to be paid by the Highway Commission in the future shall be adjusted in such fashion as to take into consideration the amount which the Highway Commission may have underpaid in the past.
“4. If at any time any party hereto desires, whether because of dissatisfaction with the amount which the Highway Commission is obligated to pay, or because the parties are unable to arrive at an amicable agreement as set forth in Section 3 thereof, or for any other reason, to terminate this contract, such party may terminate this contract at any time effective at the end of any calendar month, provided, however, that in order to terminate this agreement the party desiring to terminate the same shall give written notice to the other parties specifying the end of the month on which termination is to be effective, which notice must be given at least sixty (60) days prior to the time on which termination is to be effective.
“5. Upon the termination of this agreement as provided in Section 4 hereof, the parties hereto shall revert to their respective rights and obligations under the Bridge Contract as if this agreement had never been entered into. Pending such termination, this agreement is intended to supplant, as herein-above set forth, the provisions of the Bridge Contract with respect to the maintenance and keeping in repair of the Bridge and the contribution by the State of the cost of such maintenance and keeping in repair, as well as the cost of insurance.”
As will be noted in Section 3, the parties recognized that the sum agreed upon in the maintenance contract was an estimated figure; therefore, the contract provided for a method of adjustment if the annual *648 payment based on experience proved to be either too low or too high.
On August 13, 1936, the State Highway Engineer for the Louisiana Highway Commission, by letter to the Secretary-Treasurer of the Public Belt Railroad, suggested that the annual maintenance cost should be revised. Again on September 13, 1939, the State Highway Engineer wrote the Public Belt Railroad Commission and suggested that there be an accounting in connection with the apportionment of the maintenance cost on the Pluey P. Long Bridge. There followed a protracted exchange of letters, telegrams and memoranda. Additionally, representatives of the Highway Commission and the Public Belt Railroad met or talked on numerous occasions with reference to adjusting the figures to be paid by the respective parties as to their share of the maintenance cost of the bridge. The Highway Commission was of the opinion that its share should be reduced, while on the other hand, the Public Belt Railroad was of the opinion that the Highway Commission’s share should be substantially increased and that back payments should be made for previous underpayments. On February 4, 1946, after approximately ten years, the Public Belt wrote to the Highway Commission, furnishing an accounting and requesting a meeting to agree on adjustments. A further exchange of letters followed. On June 4, 1947, the Chief Engineer of the Louisiana Highway Commission wrote the Chief Engineer of the New Orleans Public Belt Railroad suggesting that the time was then ripe to “rewrite this agreement entirely”. Further conferences and correspondence followed until September of 1951, when the City of New Orleans, acting through the Public Belt Railroad Commission, filed the present suit. Plaintiff filed supplemental and amended petitions on December 5, 1951, January 25, 1955, and April 1, 1955. The petition, as amended, prays for judgment in the sum of $306,354.03, which it alleges is the amount by which the State’s portion of the maintenance of the bridge exceeded the total annual payments made by the State. The petition further prays for a declaratory judgment declaring the rights of the parties in the premises. Subsequent to the filing of answer and the disposition of several preliminary matters, the defendant, the Department of Highways (Successor to the Louisiana Highway Commission) filed exceptions of “no right or cause of action” on May 19, 1955. On rehearing, the trial court sustained the exceptions of “no cause or no right of action” and dismissed plaintiff’s suit at its cost.
In February, 1957, plaintiff perfected its appeal to the Supreme Court of Louisiana. By order of the Supreme Court, dated July 1, 1960, this matter was transferred to the Court of Appeal, First Circuit.
Plaintiff specifies the following errors:
“1. The Court erred in failing to consider evidence in addition to the written contract as representing the obligations between the parties.
“2. The Trial Court erred in holding that when the rights of parties are regulated by contract, recovery can never be had in quantum meruit.
“3. Belt is entitled to recover costs necessarily incurred for bridge war emergency protection.”
As has been stated above, plaintiff filed three supplemental and amended petitions, the last of which contains some 178 allegations. By reference, plaintiff incorporates the initial bridge contract, the indenture, the joint maintenance contract, some 46 numbered exhibits, and statements and exhibits marked with various letters from A to Z. The substance of plaintiff’s petition is that the Highway Department is indebted unto the Public Belt Railroad in the sum of $306,354.03, which represents the Public Belt Railroad’s allocation of additional expenditures incurred by the Public Belt for the account of the Department of Highways under the bridge maintenance contract. It is Public Belt’s contention that the parties had, both expressly *649 and impliedly, undertaken to modify the joint maintenance contract and agreed to an adjustment of the Department’s payment in accordance with a judicial determination of the items of maintenance properly allo-cable to the Department’s obligation.
The Trial Court found that plaintiff’s petition, as amended, did not state a cause of action. With this finding, we agree.
We have carefully read, and reread, the lengthy pleadings and voluminous record in this case. Under the terms of the bridge contract, title to the bridge is vested in the Public Belt Railroad. The State of Louisiana is granted the right of possession of the highway section of the bridge in perpetuity, and the State is given full jurisdiction and control over that portion as a part of the State’s highway system, with full authority to make all rules and regulations for the use of the highway section, and to determine the terms and conditions upon which the highway section might be used by the public. The bridge contract fully provides the manner in which maintenance of the bridge shall be prorated between Public Belt and the State of Louisiana. For reasons best known to themselves, the parties to the bridge contract entered into the joint maintenance contract, the pertinent provisions of which are quoted hereinabove. We are of the opinion that this contract is determinative of the rights herein at issue. It must be remembered that the bridge contract itself was entered into between the State of Louisiana, City of New Orleans and the Railroads. Under the terms of the joint maintenance contract, the State delegates and obligates the Highway Commission to pay its share of the maintenance of.the bridge. Accordingly, any obligation owed by the Highway Department, successor to the Highway Commission, is controlled by the joint maintenance contract.
Counsel for plaintiff admit that the maintenance contract is controlling; however, they contend that the contract has been subsequently modified either expressly or impliedly. As we have indicated, we have carefully studied the petition and the voluminous documents annexed thereto-We can find no evidence of any express; modification of the contract, either written or oral. Furthermore, counsel for plaintiff has not referred us to any specific incidents or documents which expressly modify the terms of the joint maintenance contract. Under the provisions of the joint maintenance contract, it was within the power of either party to terminate the agreement by giving notice in accordance with the provisions of the contract. In fact, Public Belt finally did terminate the contract, and thereafter a new contract was entered into.
Counsel for plaintiff contends, among other things, that the joint maintenance contract was modified by agreement so as to provide that adjustments be made pursuant to mutual agreement and that the joint maintenance contract not be terminated because of a dispute in making adjustments for overpayments or underpayments. Yet, counsel for plaintiff admits that Public Belt subsequently did in fact terminate the joint maintenance contract in conformity with its provisions. Counsel is correct in his statement that a written contract may be modified by subsequent agreement. However, after careful consideration of the record, we do not find any evidence of an intention to modify or alter the contract.
Counsel for plaintiff further contends that the Highway Department induced Public Belt to refrain from terminating the joint maintenance contract and to continue to perform its obligations thereunder, and that the Department is now legally estopped to deny that Public Belt is entitled to receive the additional funds so expended. We find no evidence to support this contention. Plaintiff’s petition, together with the exhibits attached thereto, establishes that the Department of Highways has paid to the Public Belt Railroad the sums of money provided for in the joint maintenance contract. In fact,. P-ubli.c'Belt asked-for the. *650 first extension of ten years in order to gain more experience and data as to costs. The Department of Highways is not even a party to the bridge contract, and any obligations it owes must, necessarily, be the result of the maintenance contract. The contract clearly sets forth the obligations of the Highway Department. We do not find any evidence of modification of this agreement. The allegations of the petition and the exhibits attached thereto clearly establish that the Department of Highways has complied with the terms of the contract.
 Counsel for plaintiff further contends that the trial court erred in holding that plaintiff is not entitled to recover from the Highway Department on a quantum meruit basis. Under the well settled law of this State, in the absence of some unusual and equitable reason, appearing from the record, and the particular situation seems to justify it, a plaintiff who sues on a contract should not be allowed to recover on a quantum meruit basis. McLeod v. Levy, La. App., 78 So.2d 549, and numerous authorities cited therein. However, the rule does not apply if the plaintiff bases his claim on a contract but makes an alternative plea for a recovery on a quantum meruit in case he fails to make proof of the existence of the contract. The reason for the rule is that the defendant cannot be expected to be prepared to meet proof as to the value of services where the claim is based on a contract for a specific amount. From a careful review of the record, we do not find any unusual and equitable reasons for invoking the doctrine' in a situation where it has not been plead. The demand is inconsistent with a demand on the contract, and must be plead in the alternative. Boxwell v. Department of Highways, 203 La. 760, 14 So.2d 627. The well plead allegations of plaintiff’s petition being accepted as true, there existed a valid contract between the Public Belt and the Highway Department. The parties entered into the contract and are bound by its terms. Either party had it within its power to terminate the contract at any time and thereby relieve itself from its provisions if it felt them onerous or burdensome. This was not done, and we lack the power to remake the contract for either of them.
Counsel for plaintiff further contends that the Department of Highways is obligated to pay for the war emergency bridge protection and relies on LSA-Civil Code Article 2299. The very language of this article makes it clearly inapplicable. The article speaks in terms of the owner being obligated to comply with the engagements made by his manager and to reimburse him for his necessary expenses. However, as has already been indicated, plaintiff is the owner of the bridge. The State of Louisiana merely has the right to use a portion of the bridge and to pay a share of the maintenance costs as provided in the contract. This the State has done.
For the reasons given, the judgment is affirmed.
Affirmed.
HERGET, J., recused.