291 So.2d 410 (1974)
Don S. COLEMAN et al.
v.
CITY OF BOSSIER CITY.
BELLAIRE HOMES, INC.
v.
CITY OF BOSSIER CITY.
Nos. 12192, 12193.
Court of Appeal of Louisiana, Second Circuit.
January 8, 1974.
Rehearing Denied February 12, 1974.
Writ Granted April 5, 1974.
*411 Feist, Schober, Gray & Howell by James Fleet Howell, Shreveport, for defendant-appellant, Bossier City.
Rogers & Loridans by Henri Loridans, Bossier City, and Booth, Lockard, Jack, Pleasant & LeSage, Shreveport, for plaintiffs-appellees, Don S. Coleman, Don S. Coleman Dev. Co., Inc. & Bellaire Homes, Inc.
Before AYRES, HALL and WILLIAMS, JJ.
HALL, Judge.
In these consolidated cases, the plaintiffs seek to recover from the defendant, the City of Bossier City, a portion of the expenses incurred by plaintiffs in constructing water and sewerage facilities which subsequently became a part of the Bossier City water and sewerage system. From judgments in favor of the plaintiffs as prayed for, the City appealed. We amend the judgments of the district court to eliminate the payment of legal interest on the principal amounts thereof and, as amended, affirm the judgments.
The facts of these cases are not in dispute. In about 1959, in order to encourage subdivision development and home building in Bossier City, the City established a policy of entering into water and sewerage "refund" agreements with subdivision developers. The neighboring city of Shreveport had a similar policy. Under these agreements the developer constructed water and sewerage facilities in a subdivision being developed for residential purposes in accordance with plans and specifications established by the City. Upon completion of the work and approval by the City, the developer and the City, represented by its Mayor and Commissioner of Public Utilities, signed a written contract whereby the City agreed to take over and operate the water and sewerage facilities and further agreed to reimburse the developer fifty per cent of the developer's actual cost, payable annually in amounts equal to money received from a seven mill ad valorem tax assessed against the subdivision.
These cases involve several such contracts entered into between plaintiffs (or their assignors), who were engaged in the business of subdivision development and home building, and the City over a period *412 extending from 1959 to 1966. The City made annual payments pursuant to the agreements until 1966 when the City advised the plaintiffs it did not have sufficient revenues to make the payments but that payments would be resumed when funds were available. No further payments were made by the City and these suits were filed to recover the balances due under the agreements.
The evidence establishes that in each instance plaintiffs contracted for the construction of the water and sewerage facilities and the cost figures used in the agreements were the actual amounts paid by plaintiffs to the contractors plus the actual amounts paid by plaintiffs as engineering fees.
The record reflects the following total amounts involved in the several agreements between defendant and each plaintiff:

Don S. Coleman:
 Actual cost of construction $104,477.82
 50% to be reimbursed $ 52,238.91
 Paid by City $ 27,286.00
 Balance due $ 24,952.91
Don S. Coleman Development Company, Inc.:
 Actual cost of construction $171,477.82
 50% to be reimbursed $ 85,841.23
 Paid by City $ 37,163.07
 Balance due $ 48,678.16
Bellaire Homes, Inc.:
 Actual cost of construction $ 95,824.91
 50% to be reimbursed $ 47,912.45
 Paid by City $ 2,100.00
 Balance due $ 45,812.45

Judgments were rendered in favor of each plaintiff in the amounts of the balances shown above, with legal interest thereon from date of judicial demand until paid.
The testimony further reflects the total amount outstanding under the agreements involved in these suits and other similar agreements entered into by the City with other developers was $568,377.53 as of the date of trial.
Joint stipulations filed in the record stipulate plaintiffs made an overall profit in each of their subdivision developments from the sale of lots and homes, taking into consideration all land purchase and development costs including the cost of installing water and sewerage facilities.
The district court, in written reasons for judgment, held the agreements null and void as being in violation of certain prohibitory statutes regulating public contracts. Finding that all parties were in the utmost good faith in entering into the agreements, the court held the agreements to be malum prohibitum, not malum in se. Citing Pugh v. Town of Logansport, 235 So.2d 226 (La.App.2d Cir. 1970) as controlling, the court held plaintiffs are entitled, on a quantum meruit basis, to recover the amounts sued for, being the unpaid balance of fifty per cent of their actual costs.
Defendant contends the contracts are illegal, null and void in that (1) no resolution was adopted by the City Council authorizing the execution of the contracts; (2) the contracts purport to pledge future revenue of the city in violation of LSA-R.S. 33:2921-33:2926; (3) the consent and approval of the State Bond and Tax Board was not obtained as required by LSA-R.S. 47:1804 et seq.; and (4) there was no compliance with the Public Contracts Law, LSA-R.S. 38:2211 et seq., requiring advertising and public bids for all public work exceeding a certain amount. The trial court held, and plaintiffs concede on appeal, that the contracts are illegal, null and void.
Defendant further contends that since the contracts are null and void, plaintiffs are not entitled to recover either under the contracts themselves or under principles of equity. The jurisprudence is contrary to defendant's position.
Pugh v. Town of Logansport, supra, is closely in point. In that case plaintiffs agreed to pay the cost of installing sewer lines to serve a subdivision with the understanding they would be reimbursed by the Town when funds became available. The sewer lines were constructed and incorporated in the sewer system of the Town which took over the maintenance and use of the lines upon completion. The court *413 held the agreement was illegal because of failure to comply with statutory requirements relating to public contracts. The court further held, however, the transaction was not malum in se, but merely malum prohibitum. Citing Boxwell v. Department of Highways, 203 La. 760, 14 So.2d 627 (1943) and Smith v. Town of Vinton, 216 La. 9, 43 So.2d 18 (1949), plaintiffs were allowed to recover their actual expenditures "under the principle of quantum meruit", the court holding it would be most unjust for the Town to have the use and benefit of the sewer lines and escape all liability therefor.
In Boxwell, plaintiff sold and delivered certain materials to the Highway Commission without advertising and competitive bidding as required by statute. The court held the contracts made in violation of the statute were wholly illegal. Finding there was no fraud and that the materials were actually used by defendant, the court held the contracts were merely malum prohibitum and not malum in se. The court held:
"Under these circumstances it would clearly be unjust to permit the Commission to reap the mentioned benefits and escape liability for them altogether. There is imbedded deeply in our civil law the maxim that no one ought to enrich himself at the expense of another. Revised Civil Code, Article 1965. On the other hand, considering the law's expressed prohibition for making the sales in the manner shown it would also be improper for the vendor to profit by the transactions.
"Equity would favor, we think, the placing of the parties in the positions that they occupied prior to the carrying out of their engagements, or in other words in status quo; but, of course, this is impossible because of the materials having been used. The only alternative is to compel payment by the vendee, or its successor, of an amount that represents the materials' actual cost to the vendor, without allowing any profits on or expenses connected with the sales."
In the Town of Vinton case, plaintiff entered into a verbal contract to furnish labor and material necessary in the repair of the Town's electrical distribution system. Upon failure of the Town to make the agreed payments, plaintiff brought suit. The court held the contract was null and void because of failure to comply with the statute requiring advertisement and public bids. Finding the situation was similar to that existing in the Boxwell case in which plaintiffs were allowed recovery "under the unjust enrichment theory of the civil law, for the actual cost to them of the materials", the court affirmed the district court's award for amounts actually expended by plaintiff which inured to the benefit of the defendant.
Marquette v. Housing Authority of Opelousas, 137 So.2d 374 (La.App.3d Cir. 1962) was a suit by a contractor to recover for labor and materials furnished under a purported contract for the construction of low rental housing units. The contract was null and void for failure to comply with the Public Contracts Law, but there being nothing about the contract which was fraudulent, evil or contrary to moral law, it was malum prohibitum and not malum in se. The court allowed plaintiff recovery on a quantum meruit basis of the amounts actually expended by him which inured to the benefit of the defendant, including amounts paid to subcontractors and furnishers of material.
In the instant cases, there was no fraud or bad faith, all parties being in good faith. The void contracts were malum prohibitumnot malum in se. The water and sewerage facilities were constructed in accordance with city specifications and were taken over by the City and incorporated into its water and sewerage system to the benefit of the City and its inhabitants. The defendant benefited at the expense of plaintiffs. The cases cited above *414 are directly in point and support recovery by the plaintiffs of their actual expense under principles of equitywhether described as unjust enrichment or as quantum meruit.
Defendant forcefully contends finally that in this particular case there should be no recovery under quantum meruit because plaintiffs actually made a profit on their subdivision developments and recovered their expenses of installing the water and sewerage facilities. Defendant argues that any recovery granted will be additional profits to plaintiffs and that the equity principle does not support recovery of profit.
It is correct that plaintiffs made overall profits on their subdivision developments from the sale of lots and houses constructed on some of the lots. However, plaintiffs are not seeking recovery of a profit on the water and sewerage facilities constructed for and conveyed to the City. They seek only a portion of their actual cost and expense paid out to the contractors and engineers for the facilities. The judgments are for actual cost and do not include any profit on the transactions between plaintiffs and the defendant.
The judgments of the district court provide for interest from date of judicial demand. The jurisprudence holds that a state or its agencies cannot be compelled to pay interest on unpaid accounts unless provision is made therefor. General laws relative to the payment of interest are not applicable. Boxwell v. Department of Highways, supra; Pugh v. Town of Logansport, supra; Marquette v. Housing Authority of Opelousas, supra. The judgments must be amended to delete the payment of legal interest on the principal amounts awarded.
For the reasons assigned, the judgments of the district court are amended to delete the payment of legal interest on the principal amounts thereof, and as amended, are affirmed.