STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT


10-1300


DENNIS TALBOT CONSTRUCTION COMPANY, INC.

VERSUS

PRIVAT GENERAL CONTRACTORS, INC.

\*\*\*\*\*\*\*\*\*
APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2007-5020-C
HONORABLE EDWARD B. BROUSSARD, DISTRICT JUDGE
\*\*\*\*\*\*\*\*\*


SYLVIA R. COOKS
JUDGE


\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and
Elizabeth A. Pickett, Judges.


**AFFIRMED**.


James M. Dill
The Dill Firm, A.P.L.C.
825 Lafayette Street
P.O. Box 3324
Lafayette, LA 70502-3324
(337) 261-1408
COUNSEL FOR PLAINTIFF/APPELLANT:
    Dennis Talbot Construction Company, Inc.

Charles M. Rush
202 Magnate Drive
Lafayette, LA 70508
(337) 235-2425
COUNSEL FOR DEFENDANT/APPELLEE:
    Privat General Contractors, Inc.

**COOKS, Judge.**

This litigation arose from contracts entered into between Dennis Talbot Construction (hereafter Talbot) and Privat General Contractors (hereafter Privat) for construction of a St. Martin Bank and Trust building in Lafayette, Louisiana. Privat was the general contractor on the project. Talbot had been retained to do site work, form and pour the building's foundation, parking lot, sidewalks, curbing, islands, and other concrete work. In furtherance of these endeavors, on June 14, 2004, Talbot submitted two proposals to Privat:

> (1) To form and pour a building slab with all materials necessary to complete the job for $44,000;
>
> (2) To pour four inch, five inch and six inch concrete formed and poured slabs for the parking lot as well as the columns and islands for the drive-thru in the amount of $118,000.

The proposals were accepted. However, at the time of these proposals, Talbot was not a licensed contractor and under the law could only perform jobs under $50,000. Talbot eventually became licensed on August 31, 2004, approximately two months after work had begun.

Felicia Magnon, Privat's bookkeeper, testified she began receiving calls in February 2005concerning Talbot's failure to pay vendors after he had been paid for the job. There were also concerns with Talbot's frequent absences from the job site. Due to these concerns, Privat requested that Talbot sign a lien waiver. Talbot signed a lien waiver on February 9, 2005, indicating he had performed work and materials as of February 1, 2005 with an actual value of $89,746.74.

On March 29, 2005, Baldwin Redi-Mix Concrete notified St. Martin Bank that $42,176.32 was past due on the project. Privat maintained, in order to retain its relationship with St. Martin Bank and to prevent a lien from being filed, it was

necessary for Privat to borrow money to pay the invoice as well as a $1,000 service charge.

Privat retained the services of an attorney and, on May 9, 2005, sent a request to Talbot asking that he return to the job to complete it, advising him that Privat was subject to a penalty of $500 per day for late completion. The correspondence also noted that Talbot had collected payments totaling $105,500 (less retainage of $5,750), but still failed to pay vendors' invoices totaling over $50,000. According to Privat, they ultimately paid vendors $57,502.43 (which included Baldwin Redi-Mix) to prevent liens on the property and incurred an additional $28,700 to finish Talbot's work.

On August 24, 2005, Talbot submitted an invoice for the outstanding balance claimed in the amount of $31,407.08. That bill was not paid by Privat. Talbot filed suit seeking payment of the outstanding balance. Privat filed a reconventional demand in the matter seeking reimbursement for the payments made to satisfy Talbot's obligation and to complete Talbot's contract. Trial was held on the matter, after which the trial court took the matter under advisement. On June 4, 2010, the trial court rendered judgment dismissing Talbot's claims, finding it did not meet its burden of proof. The trial court also specifically found Talbot and Privat both took part in an illegal act, i.e., Talbot's undertaking of a job in excess of $50,000 without a licence. To that end, the trial court denied Privat's reconventional demand, finding the clean hands doctrine barred Privat from recovering against Talbot because Privat, as general contractor, had an affirmative duty to insure that its subcontractors were licensed. This appeal followed.

**ANALYSIS**

In its assignment of error, Talbot asserts the trial court erred when it held

Talbot "was not able to recover due to a lack of license when the license was obtained

prior to the bulk of the work being performed and the general contractor had

knowledge."

The testimony was uncontroverted that Talbot did not have a contractor's

license when he entered into the agreements to perform work on the contracted job.

The trial court correctly noted that La.R.S. 37:2150-2175.6. requires that anyone

undertaking a construction job in an amount greater than $50,000 have a license.

The two proposals submitted by Talbot on June 14, 2004, totaled $162,000.

Talbot acknowledged he was aware of the licensing requirement.  This court

specifically noted "these licensing requirements may not by private agreement [be]

set aside." *Hagberg v. John Bailey Contractor*, 435 So.2d 580, 584 (La.App. 3 Cir.

1983), *writs denied*, 444 So.2d 1245 (La.1984).

Talbot argues, as he did below, that one of the two June 14, 2004, proposals

was only for $44,000, and that the bulk of the work performed by Talbot occurred

after the license was obtained.  The trial court addressed this argument in his reasons

for judgment, finding as follows:

> [Talbot] was required to obtain a license and his claim that the
> initial contract was for less than $50,000.00 is without merit.  Section
> 1109 of the State Licensing Board for Contractor Rules and Regulations
> states . . . "any division of a contract into parts less than $50,000 when
> combined is $50,000 or more, will be treated as one contract totaling the
> amount of these parts when combined."  The record reflects several
> contracts for this individual job and this individual site, which the Court
> finds to be applicable to Section 1109. Specifically, [Talbot]'s argument
> that at least two contracts, dated the same day, were for less than
> $50,000.00 is without merit and an obvious attempt to circumvent
> Louisiana law. [Talbot] knows or should have known of the law after 29
> years of contracting.  The facts are clear that he had met the threshold

amount and that a license was necessary.

We agree with the trial court's reasoning on this issue. Nevertheless, Talbot asserts despite the fact that work on the jobs commenced prior to it securing the statutorily required license, our ruling in *Hagberg*, 435 So.2d 580, affirms this right to recover in this case. *Hagberg* involved a construction dispute between a general contractor and subcontractor. We found that because the subcontractor did not have a proper license at the time the contract was formed, the contract was illegal and unenforceable. *Id.* at 584. However, relying on the Louisiana Supreme Court case of *Boxwell v. Department of Highways*, 14 So.2d 627 (La.1943), we permitted the subcontractor to recover his actual costs but not any overhead or profit. This was based upon equity and the theory of unjust enrichment. The *Hagberg* court explained:

> The purpose of the licensing requirements is the protection of the general public "against the incompetent, inexperienced, unlawful and fraudulent acts of contractors." LSA-R.S. 37:2150. This particular case does not present a situation of the type within the intended scope of protection of the licensing statute. Where incompetency or inexperience or fraudulence is not involved, the licensing statute can not be invoked to avoid payment of valid charges. . . .
>
> . . . .
>
> The crux of our consideration is that the licensing rules are not intended to permit the impoverishment-enrichment presented by the case at bar. For us to mechanically apply the general rule would result in inequity. If Hagberg had fraudulently obtained the contract, if he had been inexperienced at the work he performed, or, if his work had been substandard, our decision would be otherwise; but such is not he case.

*Id*. at 586-87.

Relying on La.Civ.Code art. 1965, this Court reasoned plaintiff therein was entitled to recover under a theory of unjust enrichment, particularly considering the general

-4-

contractor had included work performed by plaintiff to secure payment for the job, and the licensing issue was not raised until fifteen months after plaintiff commenced work.

We find the facts in this case are significantly distinguishable from those present in *Hagberg*. Talbot acknowledged having twenty-two years of experience as a contractor, and being familiar with the law requiring a contractor's license to perform jobs valued in excess of $50,000. Despite this, Talbot entered into contracts totaling over $150,000 without a license. Talbot also signed a lien waiver on February 9, 2005, despite knowledge that Baldwin Redi-Mix Concrete was owed $42,176.32. The trial court may well have felt these two instances met the "fraudulently obtained" contract exception this court spoke of in *Hagberg*.

Further, the trial court was presented with testimony of alleged substandard work performed by Talbot. Ronald Ayo, the architect for the Bank in this matter, testified Talbot's work was substandard and that he did not complete the scope of his work satisfactorily. Ayo specifically testified there were numerous items that were not completed or needed further attention. The trial court also specifically noted it found "very credible" the testimony of Paul Durand, St. Martin Bank's president, who stated Talbot was rarely at the job site. Therefore, the trial court reasonably could have found Talbot fell within the substandard work exception we also detailed in *Hagberg*.

Further, there were other distinguishing factors from Talbot in this case and the plaintiff in *Hagberg*. Although Talbot insisted it was ordered off the job, the record contained testimony from Privat and other parties that Talbot abandoned the job before it was fully completed, leaving Privat to complete the unfinished work at

substantial cost.  Also, as opposed to the contractor in *Hagberg* which received no payment whatsoever for its work, Talbot received the majority of the bid amount.

For the above set forth reasons, we find the trial court was reasonable in finding Talbot, unlike the plaintiff in *Hagberg*, was not entitled to recover under theories of equity and unjust enrichment.  Our finding on this issue renders the alternative issues presented in Privat's brief moot.[1]

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed.  All costs of this appeal are assessed to plaintiff-appellee, Dennis Talbot Construction Company, Inc.

**AFFIRMED.**

---

[1] Privat's brief opposed Talbot's assignment of error.  It also argued in the alternative that if we found merit in Talbot's assignment of error that recovery should be allowed to Talbot under theories of equity or unjust enrichment, it should be allowed to proceed with its reconventional demand which was denied because the trial court found Privat was barred from recovery by the "clean hands doctrine."