137 So.2d 374 (1962)
George MARQUETTE d/b/a Marco Construction Company, Plaintiff and Appellee,
v.
HOUSING AUTHORITY OF OPELOUSAS, Louisiana, Defendant and Appellant.
No. 391.
Court of Appeal of Louisiana, Third Circuit.
January 16, 1962.
Rehearing Denied February 21, 1962.
*375 Andrus & Pavy, by Alex Andrus, Jr., Harry B. Garland and Lessley P. Gardiner, Jr., Opelousas, for defendant-appellant.
Robert F. DeJean and Joseph A. LaHaye, by Robert F. DeJean, Opelousas, for plaintiff-appellee.
Before FRUGE, CULPEPPER and HOOD, Judges.
HOOD, Judge.
This is a suit by George Marquette, d/b/a Marco Construction Company, against The Housing Authority of the City of Opelousas, Louisiana. Plaintiff seeks to recover the sum of $172,924.75, plus legal interest and costs, for work allegedly done and materials allegedly supplied by the plaintiff and/or his subcontractors under a purported contract with the defendant, which contract was declared null and void by judgment of the U. S. District Court for the Western District of Louisiana, and that *376 action was affirmed by the U. S. Court of Appeals, Fifth Circuit. The trial court rendered judgment in favor of plaintiff and against defendant for the sum of $139,361.54, with five percent interest thereon from date of judicial demand until paid, and for all costs of the suit. Defendant has appealed from that judgment.
The record shows that during May, 1958, the defendant, a public body, advertised for sealed bids for the construction of 140 lowrent housing units in the City of Opelousas, Louisiana. Pursuant thereto several bids were received, and among them was a bid submitted by plaintiff in the amount of $1,169,118.00. The defendant accepted the bid of plaintiff, and a contract was entered into between plaintiff and defendant for the construction of this project. After the contract was awarded to plaintiff, another contractor who had submitted a lower bid for the same job, Pittman Construction Company, filed suit against defendant in the U. S. District Court for the Western District of Louisiana to annul that contract, and plaintiff intervened in that suit. As a result of that action the contract between plaintiff and defendant was declared null and void as not having been awarded to the lowest bidder, contrary to the public contract laws of Louisiana (LSA-R.S. 38:2211 et seq.). See Pittman Construction Company v. Housing Authority of City of Opelousas, 167 F.Supp. 517. The defendant appealed that decision to the U. S. Court of Appeals, Fifth Circuit, which affirmed the judgment of the U. S. District Court. Pittman Construction Company v. Housing Authority of City of Opelousas, Louisiana, 264 F.2d 695.
The contract between plaintiff and defendant was entered into on June 25, 1958, and plaintiff commenced performance within one month after that date. The judgment of the U. S. District Court annulling the contract was rendered on October 1, 1958, and all work being done by plaintiff under that contract was halted at that time. Later, however, with the approval of the U. S. District Court, some preservative work was done on the job by plaintiff, for which he claims the sum of $6,660.57, and which amount is included in his total claim.
Prior to the annulling of the contract by the U. S. District Court, plaintiff submitted three monthly estimates, showing work purportedly in place and materials purportedly stored on the site of the job, which estimates represented plaintiff's charges for that work and materials, less 10% retained as provided in the contract. These three estimates covered the periods ending July 31, 1958, August 31, 1958, and September 30, 1958. Defendant paid to plaintiff the amount due according to these three estimates, the total amount so paid amounting to $146,440.87. After the judgment annulling the contract had been rendered by the U. S. District Court, a fourth estimate was submitted by plaintiff, covering the period ending October 11, 1958, but the amount purported to be due under that estimate has not been paid by defendant. Also, a subsequent statement was submitted by plaintiff for the preservative work done by him, as authorized by the U. S. District Court, but the amount claimed under that statement has not been paid.
Plaintiff originally filed suit against defendant for $192,742.18, which he alleged was still due him for work done and materials supplied under the contract. To this suit defendant filed exceptions of no right and no cause of action and an exception of vagueness. In the meantime the defendant had advertised for bids for the completion of the job, and had awarded a contract therefor to Residential Developers, Inc. The plaintiff then amended his original petition, making Residential Developers a party to the suit, seeking an injunction against defendant and Residential Developers, and reducing his demand against defendant to $172,925.75.
Pursuant to a stipulation entered into by and between all parties the amended and supplemental petition filed by plaintiff was dismissed, thereby eliminating Residential Developers as a party to the suit. It was *377 further stipulated between plaintiff and defendant that all pleadings before the court thereafter would address themselves to the original demand in the petition, with the exception that the demand was reduced to $172,925.75, without prejudice to the rights of either party and subject to the court's ruling on the exceptions theretofore filed by defendant. In accordance with that stipulation, a second supplemental and amended petition was filed by plaintiff amending the prayer of his petition to demand only a money judgment for the reduced amount.
The trial court overruled the exceptions of no right and no cause of action, but sustained the exception of vagueness filed by defendant, and plaintiff was ordered to amend his petition to further itemize the amounts claimed. Plaintiff thereupon filed a third supplemental and amended petition, to which pleading there was attached and made a part thereof an itemized statement showing a balance due by defendant to plaintiff of the sum of $172,925.75.
Defendant then filed an answer pleading a number of defenses and praying that plaintiff's demands be limited strictly to any unpaid balance of the actual cost to him of labor, materials used and stored, equipment rentals and preservative work, and that his claims for all other items be rejected, and that the amounts previously paid to plaintiff be attributed to only those items for which he might be entitled to recover. Defendant prayed, in the alternative, that if plaintiff was allowed to recover for certain items of overhead or performance bond costs, that defendant be credited with the fair market value of any tangible items remaining in his possession, the cost of which may have been included in such overhead, and for any refund which plaintiff may receive upon cancellation of said bond. Defendant finally prayed for costs, or an equitable apportionment of costs, and for general and equitable relief.
After trial of the case on its merits the trial court rejected plaintiff's claim for attorney's fees, but concluded that plaintiff was entitled to recover all other amounts claimed. Accordingly judgment was rendered for the principal sum of $139,361.54, plus interest and costs, being the amount remaining after deducting the amount claimed as attorneys fees. It is from this judgment that defendant has appealed. No answer has been filed to the appeal.
Defendant contends primarily that the trial judge erred in overruling its exception of no right or cause of action and in permitting plaintiff to recover in contract. It is argued that the contract under which the work was performed has been decreed to be null and void, that accordingly there can be no recovery under that contract, and that plaintiff's only remedy is in quantum meruit. In this case, however, defendant contends that plaintiff has chosen to sue only in contract, that he has made no demand in quantum meruit, and that accordingly the suit should be dismissed. Plaintiff contends that he is entitled to recover in contract, but, in the alternative and in the event it is determined that there is no valid contractual relationship between the parties, he takes the position that he is entitled to recover in quantum meruit.
The pleadings and the evidence in this case establish that the contract between plaintiff and defendant was decreed by the U. S. District Court to be null and void because there had been no compliance with the provisions of LSA-R.S. 38:2211 et seq., relating to public contracts. The evidence further establishes that although the contract was invalid as being malum prohibitum, there was nothing about the contract which was fraudulent, evil or contrary to moral law, and therefore it was not malum in se.
The jurisprudence of this State has been established to the effect that a contract with a public body which is malum in se, that is, a contract which is fraudulent, evil or contrary to morals and public policy, is invalid and unenforceable, and *378 there can be no recovery under such a contract, even on a quantum meruit basis, although the work may have been performed or the materials may have been furnished. It is also well established, however, that under a contract with a public body which is invalid merely because it is malum prohibitum, that is, because it is forbidden by law, there being nothing fraudulent or inherently immoral or evil about it, recovery may be had on a quantum meruit basis, in order that the parties may be placed in substantially the same position that they occupied prior to the carrying out of their engagements. Boxwell v. Department of Highways, 203 La. 760, 14 So.2d 627; Smith v. Town of Vinton, 216 La. 9, 43 So. 2d 18, 19.
The law also is settled to the effect that, in the absence of exceptional circumstances, a plaintiff who sued solely upon a contract is not allowed to recover on a quantum meruit basis or for the value of materials furnished or services rendered. The reason for this rule is that if a plaintiff sues only on contract, the defendant cannot be expected to be prepared to meet proof as to the value of the services rendered. A plaintiff, however, may recover on quantum meruit, even though he bases his principal demand on a contract, if he makes an alternative plea for recovery on a quantum meruit basis, because in that case the defendant can and must be prepared to meet proof as to the value of the services rendered. McLeod v. Levy, La.App.Orl., 78 So.2d 549; Thibodeaux v. Falcon, La.App. 1 Cir., 197 So. 206; Webre v. Boullion, La. App. 1 Cir., 95 So.2d 857; Succession of Piffet, 37 La.Ann. 871; Hammond v. Taylor, La.App. 1 Cir., 80 So.2d 888; Alexander v. Morgan, 130 La. 378, 58 So. 13.
Plaintiff, in support of his primary argument that he is entitled to recover on contract, points out that the judge of the U. S. District Court, by order dated October 14, 1958, authorized plaintiff to do certain "protective and preservative work" on the project, pursuant to the contract between these two parties, and directed that no work under the contract was to be done after October 31, 1958. Also, on July 24, 1958, plaintiff received a telegram from an attorney who was representing defendant in the suit then pending in the U. S. District Court, stating that the "Public Housing Administration registered no objection to Marco Construction Company continuing its contract with your local housing authority" and that "payments to which Marco is entitled pursuant to the existing contract will be honored by Public Housing Authority." Further, the evidence shows that the defendant instructed plaintiff to proceed with the work shortly after the contract was entered into. All of these occurrences, plaintiff contends, establish a binding obligation on the part of defendant to pay to plaintiff the amount due under the contract for the work which was done.
We think the evidence relied on by plaintiff tends to establish the good faith of plaintiff in proceeding with work on the project, but it does not establish that the original contract was in some manner reinstated, or that any other contractual relationship between plaintiff and defendant was established. The court order merely authorized certain protective and preservative work to be done, and we do not interpret that order as authorizing plaintiff to recover in contract for all of the services which had been performed prior to that time. Defendant had no legal authority to ratify the original contract, which was void ab initio, and consequently the telegram from defendant's attorney and the instruction which defendant gave to plaintiff to proceed with the work could not have revived or re-instated the contract.
We conclude that under the circumstances shown here plaintiff is not entitled to recover in contract, but that under proper pleadings he is entitled to maintain this action for judgment on a quantum meruit basis.
*379 We have examined the petition and supplemental petitions filed by plaintiff, and we are not convinced that this suit was based solely on contract, as contended by defendant, or that the judgment of the trial court was based on a conclusion that a contractual relationship existed between the parties. Plaintiff alleges specifically that the original contract has been decreed to be null and void, he does not allege or contend that he has performed all of the services which he undertook to perform under that original contract, and the amount which he claims is much less than the total amount which defendant agreed to pay him under the contract. An itemized statement of the various amounts claimed are attached to plaintiff's third supplemental and amended petition, which statements purport to show the materials and labor furnished by plaintiff and the expenses incurred by him in connection with this project. Plaintiff does allege that while suit was pending in the U. S. District Court, he continued with the performance of the original contract, "as a result of commitments, verbal agreements, and promises in the nature of binding obligations, that Marco Construction would be paid immediately, when it was ascertained, through audited reports exactly what was due him." We do not think this allegation, considered with other averments in the original and amended petitions, is sufficient to show that the suit is based solely on contract.
Also, we think plaintiff would be entitled to recover on quantum meruit in this case, even though the petition should be interpreted as being based on contract, because the defendant in its answer squarely presents that issue by affirmatively alleging that plaintiff is entitled to recover on that basis. In its answer defendant's principal prayer is that plaintiff's demands "be limited strictly to any unpaid balance of the actual cost to him of labor, materials used and stored, insurance and equipment rentals done or used in or on said project L.A. 55-1 by plaintiff or his subcontractors." Further, during the trial, counsel for defendant stipulated that some money was due plaintiff, although he could not stipulate as to the amount, and in his written brief counsel for defendant states: "It was stipulated during the trial that some money was due the plaintiff, but the question was how much." It is apparent, therefore, that defendant could not have been taken by surprise when proof was offered by plaintiff as to the value of the materials furnished and services rendered on that project. Even though this action should be construed as being based on contract, therefore, we think that under the "exceptional circumstances" presented here plaintiff is entitled to recover on a qauntum meruit basis.
We think the rules which should be applied in determining what items of expense plaintiff may recover from defendant, if he is entitled to recover at all, are set out in the cases of Boxwell v. Department of Highways and in Smith v. Town of Vinton, both supra.
In the Boxwell case the plaintiff sued to recover for materials sold and delivered to the Department of Highways. Some of the sales were decreed to be invalid as being malum prohibitum, and as to those sales plaintiff was allowed to recover on a quantum meruit basis. In determining the amount which plaintiff was entitled to recover, the Supreme Court said:
"Under these circumstances it would clearly be unjust to permit the Commission to reap the mentioned benefits and escape liability for them altogether. There is imbedded deeply in our civil law the maxim that no one ought to enrich himself at the expense of another. Revised Civil Code, Article 1965. On the other hand, considering the law's expressed prohibition for making the sales in the manner shown it would also be improper for the vendor to profit by the transactions.

*380 "Equity would favor, we think, the placing of the parties in the positions that they occupied prior to the carrying out of their engagements, or in other words in status quo; but, of course, this is impossible because of the materials having been used. The only alternative is to compel payment by the vendee, or its successor, of an amount that represents the materials' actual cost to the vendor, without allowing any profits on or expenses connected with the sales.

* * * * * *
"An enforced settlement of this kind not only does justice and equity between the parties, but also it provides the protection to the taxpayers that the statute under consideration contemplates. At the same time it is notice to contractors and furnishers of materials that their dealings in the future with public agencies must be conducted in accordance with the law's provisions; otherwise the anticipated profits and attendant expenses will be denied them and their efforts will go for naught." (Emphasis added.)
In Smith v. Town of Vinton, supra, plaintiff sought to recover for work performed and materials furnished in connection with the rebuilding of defendant's electrical system. The contract was decreed to be void because of a failure to comply with the provisions of the laws of this State relating to the awarding of public contracts, but since no fraud was practiced plaintiff was allowed to recover on a quantum meruit basis. With reference to the amount of the award in that case, the Supreme Court said:
"In arriving at his decision in the instant cause the district judge evidently applied the doctrine of the Boxwell case, because he denied recovery to plaintiff for items of overhead expense, traveling expense, profits, and the above referred to engineering fee, while he awarded judgment for those amounts actually expended which inured to the benefit of the defendant, they being for labor, material, insurance, and equipment rental. With such application and ruling we agree." (Emphasis added.)
In view of this jurisprudence, we conclude that plaintiff in the instant suit is entitled to recover the amounts actually expended by him, or the actual expenses incurred by him on this project, which inured to the benefit of the defendant, including the amounts paid or owed by him to subcontractors and to furnishers of materials. We further conclude, however, that plaintiff is not entitled to recover any profits on the work which was done and he is not entitled to recover any general overhead expenses.
During the course of the trial plaintiff introduced in evidence a three-page itemized statement purporting to show all of the amounts alleged to be due him by defendant, which statement was identified as Exhibit P-29. This statement was prepared by plaintiff's accountant during the course of the trial, at the request of the trial judge. The statement is broken down into three separate accounts, all related to each other, and each of those accounts is set out on a separate page. The first page of the statement is entitled "Claims of Subcontractors, Materials and others," and it purports to show the remaining unpaid balances due by plaintiff to subcontractors and materialmen under 23 separate subcontracts relating to this project, amounting to the aggregate sum of $85,247.42.
The second page of the statement is entitled "Job Cost Breakdown," and it purports to itemize the total job costs, including the amount shown in the prior statement as being due subcontractors and materialmen. The total job costs, according to this statement, amount to $227,904.99.
The third, and last, page of the statement identified as Exhibit P-29 is entitled "Summarization of Cost, Overhead and Profit." *381 This portion of the statement reads as follows:

Total Job Cost per Breakdown $227,904.99
10% Overhead 22,790.50
 ___________
 Total 250,695.49
10% Profit 25,069.55
 ___________
 Total $275,765.04
Previously Paid Estimates, 1, 2 & 3 146,440.87
 ___________
Balance due on contract 129,324.17
Preservative & Protective Work 6,660.57
 ___________
 Total $135,984.74
Audit FeesAlbert W. Clay, Jr., C.P.A. 3,376.80
 ___________
 139,361.54
Robert DeJean, Attorney Fee 7,186.00
 ___________
 146,547.54
Sewell Myer, Attorney Fee 6,000.00
 ___________
 152,547.54
Attorney Fee Defending Marco from Subs 1,872.00
 ___________
 Total Claim $154,419.54

The trial judge refused to allow the attorney's fees shown on that statement, amounting to the aggregate sum of $15,058.00, but he concluded that plaintiff was entitled to recover all other amounts claimed as reflected on that statement. Accordingly, judgment was rendered for the balance of the amounts demanded after deducting the sums claimed as attorneys' fees.
Defendant contends that the trial judge erred in allowing plaintiff to recover the items listed on the last page of Exhibit P-29 as "10% Overhead" in the amount of $22,790.50, and "10% Profit" in the amount of $25,069.55.
As has already been pointed out, the jurisprudence of this State seems to be established to the effect that in a case of this kind, where a contract with a public body is invalid because prohibited by law but no fraud or immorality is involved, the contractor may recover on a quantum meruit basis for the amounts actually expended which inured to the benefit of the public body, but he is not entitled to recover overhead expenses or profits. Boxwell v. Department of Highways, and Smith v. Town of Vinton, both supra. As stated in the Boxwell case, the reason for this rule is that it serves to warn contractors and furnishers of materials that their dealings with public bodies must be conducted according to law; otherwise the anticipated profits and attendant expenses will be denied them.
Plaintiff's accountant, Albert W. Clay, Jr., makes a distinction between general overhead expenses, on the one hand, and specific expenses which are incurred in the performance of a particular contract or project, on the other. The latter type of expense, he explained, may include such things as the maintenance of an office at the job site, telephone, travel and other items which may be similar in nature to those included in general overhead expense. We understand that if an expense is incurred for a particular job, proper accounting procedure requires that it be included as a "job cost," but that other expenses which apply to the contractor's operations as a whole, and are not incurred in the performance of one particular job, cannot properly be classified as job costs, but must be considered as general overhead expense. Mr. Clay defined "general overhead expense" as follows:
"Well, general overhead are usually the general office expense, that includes the officers salaries of the corporation or officers salaries of the owners, officers travel, that is not in particular to any one job, office expense of maintaining the home office and utilities, things like that, taxes on the home offices or the warehouses at the home office, general office employees and insurance on the home office, such as the honesty bonds, employees bond, the audit bond, etc., on the office and warehouses, all insurance on all autos and trucks, preparation of bids, even though the bid is not successful, thats all general overhead. Estimators at the home office to bid jobs, sufficient amount of money to maintain investments to purchase assets, dues and subscriptions to such things as the American General Contractors Association which secures the bid bonds, separation of tax returns, things like that."
This definition, we think, is consistent with that given in 67 C.J.S. page 543, which reads as follows:

*382 "As employed in accounting, the word `overhead' is defined to mean the continuous expense of a business, irrespective of the outlay on particular contracts; those general charges or expenses, collectively, in any business which cannot be charged up as belonging exclusively to any particular part of the work or product, as where different kinds of goods are made; such general expenditure in a financial or industrial enterprise as cannot be attributed to any one department or product, excluding costs of materials, labor, and selling; the expenses and obligations incurred in connection with operation; all administrative or executive costs incident to the management, supervision, or conduct of the capital outlay, or business. Overhead is the cost of maintaining a certain necessary plant capacity, and this arises from the sum of all the work carried on over a period of time. It has also been held to be a definite element in determining value."
Contractors, in bidding on jobs, customarily and in accordance with good business practices add something to each bid to partially take care of their general overhead expenses. We interpret the Boxwell and Town of Vinton cases to mean that general overhead expenses, as above defined, cannot be recovered under circumstances such as those presented here, but that other expenses which are incurred in the performance of a particular job may be recovered as a part of the job costs.
The evidence convinces us that the overhead expenses included on page three of Exhibit P-29 are general overhead expenses of plaintiff, which are not attributable solely to this particular job. Under the jurisprudence above cited, plaintiff is not entitled to recover either these general overhead expenses or profits. We conclude, therefore, that the trial judge erred in permitting plaintiff to recover overhead expenses and profits, and the judgment must be amended to disallow those items.
Defendant further contends that a number of items included in page two of Exhibit P-29, entitled "Job Costs Breakdown," are actually "general overhead expenses," and that the trial judge erred in permitting plaintiff to recover them. Each of the items which defendant contends should be disallowed have been paid by plaintiff, and the accountant who prepared that statement testified as to the correctness of each such entry. We think the evidence shows that all of the items on that portion of the statement which defendant contends should be disallowed were expenses which were actually incurred and paid by plaintiff specifically for this job, that no general overhead expenses were included, and that all of said items inured to the benefit of defendant. For those reasons we think the trial court properly allowed plaintiff to recover the amount of these expenditures.
Defendant further complains that the trial court erroneously allowed plaintiff to recover auditing fees in the sum of $3,376.80. The record shows that in December, 1958, defendant Housing Authority requested that plaintiff's auditor prepare and submit to it a complete audit of this job in order that defendant could determine the amounts which it owed. In compliance with that request the audit was made and was furnished to defendant. The auditor then submitted to plaintiff a bill in the amount of $3,376.80 for this work. This audit would not have been made, and the expense of making it would not have been incurred, except for the fact that defendant requested it. It was made solely for the benefit of the defendant, and the expense of having it made was incurred solely in connection with this particular job. For the reasons which have already been pointed out, therefore, this item of expense is one for which plaintiff is entitled to be reimbursed. We cannot agree with defendant in its argument that it should be disallowed as an item of general overhead expense.
With further reference to this auditor's fee, counsel for defendant argues that according to the evidence the audit was made *383 pursuant to a request made directly to the auditor by the defendant, that accordingly any right to claim fees for making it would be vested solely in the auditor, and that in the absence of any evidence of employment or subrogation giving plaintiff the right to collect that fee plaintiff has no right or cause of action to do so. We do not interpret the evidence as showing that a contractual relationship existed between the auditor and defendant in connection with the making of this audit. The record shows that the auditor, although engaged in private practice as a certified public accountant, had been employed by plaintiff as an auditor in connection with this job. The request for the audit may have been directed to the auditor, but we think it is clear that he was acting as the agent or employee of plaintiff in complying with that request. In our opinion plaintiff is entitled to recover from defendant that item of expense.
On page one of Exhibit P-29 the names of the unpaid subcontractors and furnishers of materials are listed with the amounts alleged to be due each. Defendant contends that some of the claims of subcontractors should be disallowed and that the amounts claimed by others should be reduced. As a basis for the argument that some of these claims should be reduced, it is contended that profits and overhead expenses have been included as a part of the amounts due, and that under the rules announced in the Boxwell and Town of Vinton cases profits and overhead expenses are not recoverable.
In our opinion the rules applied in the Boxwell and Town of Vinton cases are not applicable to the claims of the subcontractors and furnishers of materials in this case. One reason for that conclusion is that none of the contracts entered into between plaintiff and his subcontractors involves a public body, and we interpret the rule announced in both of the cited cases to be applicable only to contracts with public bodies. A second reason why we feel that those cases are not applicable is that none of these subcontracts are invalid as being malum prohibitum. See Moore v. Housing Authority of City of Opelousas, La.App. 3 Cir., 125 So.2d 504.
No Louisiana authorities have been cited by counsel setting out the rule which should be applied in determining the amounts which subcontractors and materialmen are entitled to recover under circumstances such as are presented here. It is necessary, therefore, to determine this issue on an equitable basis. LSA-C.C. Articles 21 and 1965.
In the case of Bell v. Kanawha Traction & Electric Co., 83 W.Va. 640, 98 S.E. 885, the Supreme Court of Appeals of West Virginia quoted with approval the following excerpt from Elliott on Contracts:
"`Although by the terms of a contract for work and labor the full price is not to be paid until the work is completed, if a complete performance becomes impossible by act of the law, the contractor may recover for the work actually done at the full price agreed on.'"
In McIntosh v. Funge, 210 Cal. 592, 292 P. 960, 74 A.L.R. 420, the following statement was made by the California Supreme Court:
"Although it is true that under the contract G. Massagli & Co. was obligated to construct the foundation, basement floors and walks, garage floor, and cement steps in addition to rat-proofing the building, and that the only work performed by the company was the putting in of the foundation and the rat-proofing, nevertheless the failure of the company to complete the contract was caused by the action of the owner in notifying the principal contractors to stop work. Under such circumstances the company is entitled to recover for the work actually performed. It should be noted that the testimony of Albert Massagli as to the value of the work was limited to the value of the work actually performed."
*384 The Court of Civil Appeals of Texas, in American Surety Company v. San Antonio Loan & Trust Co., 98 S.W. 387, 400, applied the following rule:
"* * * The general rule, `that in case of an entire contract the whole work must be completed and delivered in a state of completion before there can be a demand for payment, and, if before completion any part of it has been destroyed without the fault of the builder, the loss must be borne by the contractor,' has no application to a case where one contracts to do a particular part of the work in the construction of a building or repairs on one already constructed, and the building is destroyed before completion or the repairs are finished. In such a case the contractor is excused from further performance of the contract, and may recover for what he has done in pursuance of it. * * *"
The general rule was correctly stated, we think, in 9 Am.Jur., Building and Construction Contracts, Sec. 45, as follows:
"Subcontractors may recover for the work actually performed although they only performed part of their contract, where the failure to complete the same was caused by the unjustified action of the owner in notifying the principal contractors to stop work."
A similar rule was applied in Atlantic & D. Ry. Co. v. Delaware Construction Co., 98 Va. 503, 37 S.E. 13.
The evidence in the instant suit convinces us that all of these subcontractors and materialmen entered into agreements with plaintiff, as the general contractor, in good faith, that most of them performed some services or furnished some materials before the original contract was annulled, and that they were prevented from continuing to perform the obligations which they had undertaken through no fault of their own. Under those circumstances we feel that the subcontractors and materialmen should not be penalized by being denied some profits and overhead expenses, yet the general contractor should not be required to pay damages for breach of contract because the judgment of the court also made it impossible for him to continue to perform his obligations under the principal contract as well as the subcontracts.
In this case we think the judgment of the U. S. District Court annulling the general contract between plaintiff and defendant had the effect of terminating the agreements between plaintiff and his subcontractors and materialmen, because that decree made further performance of those contracts impossible. Under those circumstances we feel that each subcontractor is excused from further performance of the contracts, and he may recover as near as possible according to the terms of that contract for that part of the work he has done, including a reasonable profit and a reasonable allowance for overhead expenses commensurate with the amount of work which has been performed. In cases where no part of the subcontract was actually performed or completed, but the subcontractor performed services or incurred expenses in preparing to carry out his obligations under the contract, then we think the subcontractor is entitled to be reimbursed on a quantum meruit basis for those services and expenses.
We are aware of the fact that an "Addendum" was attached to most of the subcontracts, providing that "any claim for labor and material or any other sums or demands upon Marco Construction Company under the contract shall be settled and adjusted with Marco Construction Company upon the same basis and terms as the Marco Construction Company's settlement and adjustment with the Housing Authority." In our opinion this addendum or supplement to these subcontracts has no effect on plaintiff's claim here because there has been no "settlement and adjustment" between Marco and the Housing Authority.
The trial judge in concluding that plaintiff was entitled to recover the full amount *385 shown on page one of Exhibit P-29 as being due subcontractors and furnishers of materials, said:
"With reference to all the subcontractors who were placed on the stand and their bills introduced, for which the plaintiff is legally liable, these were all proved beyond a preponderance of the evidence and the defendant failed to carry the burden of proof to contradict them."
Our review of the evidence convinces us that the trial court erred in allowing plaintiff to recover the amount alleged to be due Ryder Contracting Company, a subcontractor. We also are convinced that the awards made to plaintiff representing amounts due W. H. Branson Company and Moore's Plumbing Company, subcontractors, are excessive and should be reduced.
The evidence shows that Ryder Contracting Company did not do any work on this project at all. He furnished no materials or labor, he did not order any materials, he did not move any equipment on the job, and he incurred no expense in preparing to perform his obligations under his subcontract. The only work done or expense which seems to have been incurred by Ryder in connection with this project was that involved in preparing and submitting his bid. After the contract was annulled he submitted a bill to plaintiff for 2% of each of his subcontracts, which he testified was intended to cover "normal office overhead." In our opinion, the evidence fails to establish any indebtedness on the part of plaintiff to Ryder Contracting Company, and accordingly plaintiff is not entitled to recover from defendant the sum of $2,889.70, being the amount listed in Exhibit P-29 as being due Ryder. The amount of the award in this case, therefore, must be reduced by that amount.
The unpaid balance due W. H. Branson Company, a subcontractor, is shown in Exhibit P-29 as being $6,081.48. This includes a charge of 15% as overhead expense and 10% as profits, amounting to the aggregate sum of $1,429.22 for those two items. The overhead charge claimed by this subcontractor is greater than that claimed by any other, and the evidence does not indicate why such a charge is justified. Accordingly, we think this charge for overhead expenses is excessive and should be reduced to 10%. According to our figures, the total amount of overhead and profit which should be allowed on this claim should be $1,132.59, and accordingly the amount awarded as being due W. H. Branson Company must be reduced by $296.63.
The trial judge found that plaintiff was indebted to Moore Plumbing Company for $26,941.81. The evidence, however, fails to establish an indebtedness in excess of $18,337.51. The award to plaintiff, therefore, must be reduced by the further sum of $8,604.30.
Since Ryder Contracting Company, W. H. Branson Company and Moore Plumbing Company were not parties to this suit, the right will be reserved to plaintiff to recover from defendant any additional amount which plaintiff may be compelled to pay any of these three subcontractors as a result of the agreements entered into between plaintiff and them relating to this project.
In our opinion the evidence supports the conclusion of the trial judge that plaintiff is entitled to recover all other amounts shown on page one of Exhibit P-29, representing the unpaid claims of subcontractors and furnishers of material, except as to the three claims hereinabove mentioned.
Defendant further contends that the trial court erred in allowing plaintiff to recover interest on the principal amount of the judgment, since the Housing Authority is a public agency. LSA-R.S. 40:391 provides that defendant is a "public body corporate and politic," and in State ex rel. Porterie v. Housing Authority of *386 New Orleans, 190 La. 710, 182 So. 725, the Supreme Court found the Housing Authority of New Orleans to be a "public agency." In Boxwell v. Department of Highways, supra, the Supreme Court said:
"It is generally held that a state or its agencies cannot be compelled to pay interest upon unpaid accounts unless provision is made therefor * * *; general laws relative to the payment of interest are not applicable."
In view of this jurisprudence, we conclude that the trial court erred in condemning defendant to pay interest, and that the judgment of the district court must be amended in that respect. See also Makofsky v. Department of Highways, 205 La. 1029, 18 So.2d 605.
It is not necessary for us to consider defendant's further argument that under the provisions of LSA-R.S. 13:4521 it is relieved of liability for costs, except as to stenographer's costs for taking testimony, because we are convinced that the costs in this case should be apportioned, and that defendant should be condemned to pay the stenographer's costs for taking the testimony, and that all other costs in the district court should be assessed to plaintiff.
In view of the fact that this suit involves the claims of a number of subcontractors, we feel that it should have been disposed of by means of a concursus proceeding, in which all of the claimants were made parties. We have decided not to remand the case to the district court for that purpose, however, because neither party has requested that that be done, and the parties, in fact, have indicated that they do not desire such a proceeding. The record shows that plaintiff in his first supplemental and amended petition prayed for a concursus proceeding, but thereafter a stipulation was entered into between all counsel to the effect that that demand would be withdrawn. Representatives of all of the subcontractors whose claims have been contested testified at the trial, and we note that the trial court included the following provision in its judgment:
"IT IS FURTHER ORDERED, ADJUDGED AND DECREED, that satisfaction and payment of this judgment shall be made by a certified check of checks payable jointly to the plaintiff and each of the claimants whose bills are in evidence and have been approved."
No complaint has been made as to this provision in the decree, and accordingly we have decided to incorporate substantially the same provision in the judgment which we expect to render here.
We concur with the trial judge in his conclusion that plaintiff is entitled to recover from defendant, but we are convinced that the judgment of the trial court should be amended as hereinabove set out. Accordingly, the judgment of the trial court is amended and recast to read as follows:
It is ORDERED, ADJUDGED and DECREED that judgment be and it is hereby rendered in favor of plaintiff, George G. Marquette, d/b/a Marco Construction Company, and against defendant, Housing Authority of the City of Opelousas, for the sum of $79,710.86, and for all costs incurred as stenographer's fees for taking testimony in this proceeding. All other costs incurred in the trial court are assessed to plaintiff.
It is further ORDERED, ADJUDGED and DECREED that the right is specifically reserved to plaintiff to recover from defendant any additional amounts, over and above those allowed in this proceeding, which plaintiff may be compelled to pay to Ryder Contracting Company, W. H. Branson Company or Moore's Plumbing Company, in connection with the subcontracts hereinabove described between plaintiff and said subcontractors.
It is further ORDERED, ADJUDGED and DECREED that the payment of any *387 portion of this judgment which is intended to satisfy the claim of a subcontractor or the furnisher of materials (as listed on Page one of Exhibit P-29, except as hereinabove amended) shall be made jointly to plaintiff and to the subcontractor or furnisher of materials.
All costs of this appeal are assessed to plaintiff-appellee.
Amended and affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.