FRUGÉ, Judge.
This is a suit by Southern Construction Company (hereinafter referred to as “contractor”) against the Housing Authority of the City of Opelousas, Louisiana (hereinafter referred to as “Housing Authority”), for payment of an amount allegedly due under a building contract between said parties. The trial court awarded judgment in favor of plaintiff for $7,160.00. Both parties have appealed from said judgment. Defendant contends that the trial court was in error in awarding judgment in favor of plaintiff, whereas plaintiff contends that the trial court was in error in refusing to award legal interest on the principal amount and in refusing to assess all court costs against defendant.
The factual situation giving rise to the instant action is as follows: On November 29, 1960, the Housing Authority entered into a contract with plaintiff contractor for the construction of forty low-rent housing units in the City of Opelousas, Louisiana. The time allowed for completion of the contract was 320 calendar days from the above date, or to October 14, 1961. The contract provided for liquidated damages in the amount of $40.00 per day (actually $1.00 per unit) to be paid by the contractor to the Housing Authority for each day that the project required in excess of the specified time limit. Claiming that the contractor exceeded said time limit by 179 days, the Housing Authority withheld $7,160.00 from the agreed contract price as liquidated damages. This is the amount which is in dispute.
Plaintiff contractor claims that it is entitled to the entire contract price since the project was completed and accepted. Said contractor denies that it failed to timely complete the project and alleges, alternatively, that if the completion was not timely, said contractor was never placed in default as is required by law for the collection of damages.
We believe that the present jurisprudence of this state is correctly summarized in Brooks v. Neyrey, La.App. 4 Cir., 167 So.2d 400, as follows:
“It is well settled that a contractor’s failure to complete a building contract within the time specified in the contract constitutes merely a passive breach thereof and that a putting in default is a condi *456 tion precedent to the recovery of liquidated damages for the contractor’s delay in completion unless by the terms of the contract a putting in default is waived or unless by stipulation in the contract or by the nature and circumstances of the agreement time is of the essence thereof, or unless a putting in default is excused by some act of the obligor which would render it a vain and useless thing, (citations omitted).”
See also Godchaux v. Hyde, 126 La. 187, 52 So. 269; Gulotta v. Swinney, La.App. 1 Cir., 143 So.2d 775; Binnings Construction Co. v. Louisiana Life Ins. Co., La.App. 4 Cir., 139 So.2d 561; Comment: “The Putting in Default as a Prerequisite to Suit in Louisiana,” 1 Loyola Law Review 127.
The contract involved herein does not waive the putting in default nor stipulate that time is of the essence. However, recent cases dealing with the question presented herein have indicated that when the contract states a specific completion date and provides for stipulated damages if the project is not completed by said date, it is presumed that time is of the essence and, therefore, no putting in default is required. See Brooks v. Neyrey, supra; Binnings Construction Co. v. Louisiana Life Ins. Co., supra. In fact, in at least two cases the courts have not found it expedient to discuss the hypo-technical concept of “putting in default” when said contractual conditions prevail. See Wilson v. Peak, 210 La. 969, 28 So.2d 677; Meaux v. Southern Construction Corp., La.App. 3 Cir., 159 So.2d 156.
While, as stated above, time is generally of the essence in cases of this nature, we have determined that under the unique situation presented herein, time was not of the essence and a putting in default was necessary. The contract in question provided:
“If the work is delayed by any act or neglect by the local authority or its representatives, or by changes in the work, or by strikes, fire, freight embargoes, unusually severe weather, or by unforeseeable causes beyond the control and without the fault of the contractor, then, if the contractor shall within ten days from the beginning of such delay notify the contracting officer of the cause and extent thereof, the Local Authority, subject to verification of the facts and to approval by the PHA, shall extend the time for completing the work.”
In compliance with the above provision, the contractor presented a number of requests for time extensions to the Housing Authority. The number of requests is in dispute, the contractor claiming to have submitted forty-one requests ranging from two day extension requests to thirty day extension requests, and the Housing Authority admitting receipt of only twelve requests. The record shows that said requests for time extensions were not considered until after the project was completed. The project herein was completed 214 days after the original set completion day. The Housing Authority, after consulting the daily reports of its inspectors, allowed the contractor an extension of thirty-five days and computed liquidated damages using the figure of 179 days. Since the contractor had no way of knowing which requests for time extensions would be accepted and which would be rejected, it certainly did not know the date the Housing Authority would commence assessing the stipulated damages ($40.00 per day). Under these circumstances, we are of the opinion that time was not of the essence and that if the Housing Authority desired to assess the stipulated damages, the burden was upon it to put the contractor in default. The factual situation herein presents a sound basis for applying the doctrine of “putting in default.”
In answer to the Housing Authority’s contention that it actually put the contractor in default, we need only state that the record does not indicate that the contractor was ever informed which requests for time extensions would be granted or upon what date the Housing Authority would start *457 assessing liquidated damages until after the project was finally completed. The Housing Authority’s contention that putting in default would have been a “vain and futile act” is also without merit, since the contractor might well have increased the number of workmen and worked on the weekends, etc., if it had known that liquidated damages in the amount of $40.00 per day were being assessed against it.
For the foregoing reasons we are of the opinion that the plaintiff contractor is entitled to recover the $7,160.00 withheld by the Housing Authority. Plaintiff contractor further contends that it is entitled to legal interest on the judgment and that all court costs should have been assessed to the Housing Authority. The trial court refused to allow interest on the judgment and assessed only those costs provided by LSA-R.S. 13:4521 against the Housing Authority.
Until the case of Pittman Const. Co. v. Housing Auth. of New Orleans, La.App. 4 Cir., 169 So.2d 122, (writs refused), the jurisprudence of this State had consistently been that, in absence of a specific statute, interest could not be assessed against the State or its agencies in matters arising ex contractu. See State ex rel. Anderson v. Walker, 233 La. 687, 98 So.2d 153; Jefferson Lake Sulphur Co. v. State, 213 La. 1, 34 So.2d 331; Hamberlin v. Tangipahoa Parish School Board, 210 La. 483, 27 So.2d 307; Orleans Parish School Board v. City of New Orleans, La.App. 4 Cir., 156 So.2d 718; Marquette v. Housing Authority of Opelousas, La.App. 3 Cir., 137 So.2d 374, 375; State ex rel. Shaw v. Police Jury of Catahoula Parish, La.App. 2 Cir., 167 So. 754. Legal interest has been allowed on judgments against the State or its agencies in tort actions under the provisions of LSA-R.S. 13:4203 and in condemnation proceedings on the theory that “to hold otherwise would be a violation, at least, of the spirit of the constitutional guarantee that private property shall not be taken for public purposes, etc., without just and adequate corn-pensation.” Hamberlin v. Tangipahoa Parish School Board, supra.
Our Supreme Court in Boxwell v. Department of Highways, 203 La. 760, 14 So.2d 627, quoting from R.C.L. (verbo Interest), Sec. 14, states the theoretical basis for not allowing interest to be assessed against the State or its agencies in matters arising ex contractu as follows:
“ * * * whenever interest is allowed either by statute or by common law, except in cases where there has been a contract to pay interest, it is allowed for delay or default of the debtor. But delay or default cannot be attributed to the government. It is presumed to be always ready to pay what it owes. The apparently favored position of the government in this respect has been declared to be demanded by public policy.”
We note here that the Housing Authority of Opelousas is an agency of the State. See Public Housing Administration v. Housing Authority of Bogalusa, 242 La. 519, 137 So.2d 315; Marquette v. Housing Authority of Opelousas, La.App. 3 Cir., 137 So.2d 374.
Our brethren of the Fourth Circuit held in the Pittman case that the 1960 amendment to Article 3, Section 35 of the Louisiana Constitution provided a constitutional waiver of the immunity of state agencies from liability for interest. The primary-purpose of said amendment was to legislatively overrule the decisions of our Supreme Court in Stephens v. Natchitoches Parish School Board, 238 La. 388, 115 So.2d 793, and Duree v. Maryland Casualty Company, 238 La. 166, 114 So.2d 594, in which said court held that legislative authorization to sue the state, or an agency, subdivision, or corporation thereof, in an action ex delicto constituted only a waiver of immunity from suit and not a waiver of immunity from liability for the negligence of an employee. See Terrebonne Parish School Board v. St. Mary Parish School Bd., 242 La. 667, 138 So.2d 104; “The 1960 Proposals to Amend *458 the Louisiana Constitution,” 21 Louisiana Law Review 109, 110; “The Crain Myth— A Criticism of the Duree and Stephens Cases,” 20 Louisiana Law Review 449.
After a careful reading of the 1960 amendment to Article 3, Section 35 of the Louisiana Constitution and the statute giving Housing Authorities power to sue and be sued (LSA-R.S. 40:474(1)], we are unable to conclude that the Legislature intended to overrule the well-established jurisprudence denying recovery of interest against the State and its agencies in matters arising ex contractu. The rationale of the Pittman case is that by waiving both immunity from suit and liability, the Legislature has waived the immunity from liability for interest. A similar argument was presented to our Supreme Court in Jefferson Lake Sulphur Co. v. State, supra. In said case the legislative waiver stated that the courts should apply such laws as were applicable between private individuals. However, our Supreme Court refused to assess interest against the State without a specific statute so providing.
Although there may be some questions as to the logical soundness of the State’s (or its agencies’) immunity from interest in suits of this nature, we feel, as did our Supreme Court in Hamberlin v. Tangipahoa Parish School Board, supra, “that the advisability of changing this long standing public policy * * * (is) a matter directed to the wisdom of the Legislature rather than within the province of the Court.”
In the Pittman case the Court further held that the State and its agencies could be held liable for all court costs in cases of this nature. We cannot agree with said holding. The 1960 amendment to Article 3, Section 35 of the Louisiana Constitution specifically provides:
“ * * * The Legislature shall, by special or general laws or resolutions, prescribe the procedural rules, * * * to govern suits against the state and other public bodies * * * ” (emphasis supplied).
LSA-R.S. 13:4521 (as amended by Act No. 509, Sec. 1, of 1964) states:
“Except as hereinafter provided, neither the state, nor any parish, municipality, or other political subdivision, public board or commission shall be required to pay court costs in any judicial proceeding instituted or prosecuted by or against the state or any such parish, municipality or other political subdivision, board or commission, in any court of this state or any municipality of this state * * * This section shall have no application to stenographers’ costs for taking testimony.”
We feel that the assessment of court costs is purely procedural and is covered by the above statute. See Deal v. Hodge, 124 La. 998, 50 So. 823; Opelousas, Gulf & N. E. Ry. Co. v. St. Landry Cotton Oil Co., 121 La. 796, 46 So. 810; Article 1920 of the Louisiana Code of Civil Procedure.
 Upon oral argument of this case (and later by written motion) counsel for Southern Construction Company moved to dismiss the appeal taken by the Housing Authority on the ground that under the rationale of the Pittman case, supra, the Housing Authority must furnish an appeal bond. If the position in regard to court costs in the Pittman case is logically sound, this result might follow. However, we are of the opinion that this matter, like that of court costs, is purely procedural. LSA-R.S. 13:4581 specifically provides that public boards and commissions are not required to furnish an appeal bond. Therefore, the motion to dismiss the appeal taken by the Housing Authority is denied.
For the above reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed equally to said parties.
Affirmed.