SARTAIN, Judge.
The above entitled cause and its companion case of Rasberry and Clarke Company, Inc. v. Louisiana Department of Highways, La.App., 205 So.2d 449, involve two contracts for highway construction material. Louisiana Paving Company, Inc., (Louisiana Paving) furnished material for the State Project No. 5-08-22, and Rasberry and Clarke Company, Inc. (Rasberry and Clarke) furnished material *446 for State Project No. 207-07-09. The two suits were consolidated for purposes of trial on the merits in the district court and are also consolidated for purposes of appeal .to this court. Accordingly, this opinion shall apply to both cases with separate judgments rendered in each. Louisiana Department of Highways (Department) has appealed from an adverse judgment in each case.
The question for resolution in the trial court and now before us concerns the interpretation of pertinent provisions of the two contracts. The Department of Highways applied a shrinkage factor in each instance which reduced the gross receipts of each plaintiff. In the case of Louisiana Paving this factor amounted to 18% of the total cubic yardage of shell and sand mixed on the roadbed or $64,390.56. In the Rasberry and Clarke contract the reduction factor was 15.5% of the total cubic yardage of shell and sand mixed on the roadbed or $45,611.82. Judgment was rendered in favor of respective plaintiffs, casting the Department in these amounts, together with legal interest thereon from date of judicial demand until paid and for costs relating to the stenographer’s taking of testimony. All other costs of court were assessed against plaintiffs.[1]
There is no dispute between the parties as to any other items of the contract, the materials furnished thereunder, or the successful completion ' thereof, including the shrinkage percentage factors applied by the trial judge. The sole issue is whether or not the contract entered into between the parties entitles Department to apply the percentage factor and deduct the sums aforementioned.
The trial judge in detailed and comprehensive reasons for judgment determined that the contract was ambiguous and resolved the matter against Department which had prepared the same. We quote with approval the following portion of his reasons therefor:
“The pertinent contractual provisions are the same in each case. Relative to ‘mixing’ the materials, the contracts provide :
‘The base course material shall be thoroughly and uniformly mixed on a mixing table, in a pug mill, or on the prepared roadbed.’
Relative to ‘measurement’ of shell and sand, the contracts provide:
‘Measurement of shell and sand will be made by the cubic yard in vehicles at the point of delivery on the road as provided in Article 9.01, Division 1 of the Standard Specifications.’
Relative to the ‘basis of payment’ for the materials, the contracts provide:
‘The number of miles of existing roadbed scarified and compacted, measured as provided above, will be paid for at the contract unit price per mile, which price and payment shall constitute full compensation for furnishing all equipment, labor, tools, and incidentals, and performing all work required to satisfactorily complete the item.
Payment will be made under: — Item 2-6-2, Shell and Sand Base Course (65% clam; 35% sand), per cubic yard — Item 2-6-4, Shell and Sand Base Course (65% Graded Reed; 35% sand), per cubic yard- — .’ (Emphasis by Court)
Relative to the Schedule of Items for bid purposes, the Louisiana Paving Company contract contained two pertinent items. They are Item Number 2-6-2, setting forth the approximate quantity of 62,934 cubic yards of ‘Shell and Sand Base Course (65% clam; 35% sand),’ at $3.25 per cubic yard for a total amount of $204,-535.50; and, Item Number 2-6-4,[2] setting forth the approximate quantity of 43,520 *447 cubic yards of ‘Shell and Sand Base Course (65% clam; 35% sand) (Shoulders),’ at $3.25 per cubic yard for a total amount of $141,440.00.
Relative to the Schedule of Items for bid purposes, the Rasberry & Clarke, Inc. contract contained one pertinent item. It was Item Number 2-6-4, setting forthe (sic) the approximate quantity of 57,418 cubic yards of ‘Shell and Sand Base Course (65% Graded Reef; 35% Sand) (Roadway),’ at $4.30 per cubic yard for a total amount of $246,897.40.
The problem herein arose when the specifications relative to the method of mixing the two separate materials were changed and at the same time the provision relative to application of a shrinkage factor was not inserted. Whereas before, the materials were to be mixed on a mixing table or in a pug mill prior to stockpiling on the job (a circumstance not requiring the contractual' provision relating to a shrinkage factor), we now find added a third method of mixing, i. e., ‘on the prepared roadbed.’ At the same time the method of measurement remained the same, i. e., ‘by the cubic yard in vehicles at the point of delivery on the road.’ Under these circumstances it was, in the opinion of this Court, imperative that the contractual provisions previously used by the Department of Highways spelling out the application of a shrinkage factor be inserted in order to arrive at a true cubic volume of base course material. It would not, of course, be practical to remove the materials from the roadbed for measurement purposes after being mixed thereon. Sadly, the provision relating to the shrinkage factor was not retained in the instant contracts and hence confusion and litigation resulted from what this Court deems to be a remaining ambiguity.
We say ambiguity because on the one hand the schedule of items for bid purposes and the basis for payment provision implies compensation for a mixed material or Shell and Sand Base Course whereas, on the other hand, the measurement of the materials, referred to by the Basis of Payment provision, must be in a separate state prior to mixing if the third alternate of mixing was elected by the plaintiffs as was the case. The ambiguity could, as aforesaid, only be resolved or removed by the previous customary or some similar contractual provision relating to a shrinkage factor.
One can hardly deny that there is ambiguity present. Counsel for the defendant argues that there was an intended application of a shrinkage or reduction factor; that the two materials were at all times to be ultimately provided in a mixed state; that the Schedule of Items provided for a certain number of cubic yards of shell and sand base course; that each contractor bidding these items placed his price on the item as a composite or unified material; that physical criteria and usage make use of a shrinkage factor implicit.
By the same token, counsel for the plaintiffs can just as logically argue that even though the Schedule of Items provides for a certain number of cubic yards of a base course, the basis of payment refers the contractor to the method of measurement and that when the materials are measured separately as alternate 3 implies, the total quantity estimated, in a separate state* would be sufficient to do the job.
Even the witnesses, all of whom are familiar with such contracts, and whose positions bear directly upon the execution of these contracts, differed in their interpretations which again is indicative of the ambiguity.
This Court cannot, from the evidence, conclude that it was the intention of the parties that the shrinkage factor be applied. The key witnesses of the defendant testified the matter was not consciously considered prior to execution of the contracts. The plaintiffs’ witnesses have asserted they concluded the shrinkage *448 factor provision was omitted purposely when the third alternate method of mixing was added, and, in the case of Louisiana Paving Company, Incorporated, it adjusted its bid downward.
What then is the law applicable to a contract where there is ambiguity or the interpretation is, doubtful? Article 1957 of the Civil Code states:
‘In a doubtful case the agreement is intrepreted (sic) against him who has contracted the obligation.’
Article 1958 of the Civil Code provides:
‘But if the doubt or obscurity arise for the want of necessary explanation which one of the parties ought to have given, or from any other negligence or fault of his, the construction most favorable to the other party shall be adopted, whether he be obligor or obligee.’
Pursuant to the aforesaid provisions of the Civil Code, our Courts have held many times that where a dispute arises as to what the provisions of a written contract are or what its stipulations mean, it must be interpreted against those who have prepared the contract; that doubtful clauses in a contract should be construed against the party drafting the ambiguous provisions; that an instrument is to be most strictly construed against the party who prepared it; and, that where there is a conflict between different clauses of a contract, such conflict must be resolved against him by whom the contract was prepared.
See Kuhn vs. Stan A. Plauche Real Estate Co., [249 La. 85] 1966, 185 So.2d 210; Gibbs vs. Giering, [La.App.] 1966, 183 So.2d 459; Dickerson vs. Miller[s] Mutual Fire Insurance Co. of Texas, [La.App.] 1962, 139 So.2d 785; and, Succession of Cormier, [La.App.] 1955, 80 So.2d 571.
This Court feels that the cases just cited and the two codal articles cited, particularly Article 1958, compels it to find for the plaintiffs in these cases.”
The above findings of fact and conclusions of law of the trial judge are fully supported by the record. We affirm his reasons therefor not only because he is in a better position to weigh the testimony of the witnesses but also because our independent study of the entire record leads us inevitably to the same result.
Department raises as its final issue the award by the trial judge of interest to the plaintiffs on the amount of their respective judgments from date of judicial demand until paid, citing Hamberlin v. Tangipahoa Parish School Board, 210 La. 483, 27 So.2d 307; Makofsky v. Department of Highways, 205 La. 1029, 18 So.2d 605; Boxwell v. Department of Highways, 203 La. 760, 14 So.2d 627; Jefferson Lake Sulphur Co. v. State, 213 La. 1, 34 So.2d 331; and Southern Construction Co. v. Housing Authority, La.App., 189 So.2d 454. With the exception of the Southern Construction Company case the decisions reached in the other cases disallowing interest against State agencies undoubtedly reflected the law of the State as it then existed. However, as stated in Miller v. Housing Authority of New Orleans, 249 La. 623, 190 So.2d 75, “The Legislature of 1960 authorized an amendment to Article 3, Section 35 of the Constitution of 1921 by Act No. 621 which was adopted by the electorate on November 8, 1960, relieving the State and its subdivisions from immunity from liability as well as interest.” See also Southern Construction Company v. Housing Authority, 250 La. 569, 197 So.2d 628 which reversed the decision of the Third Circuit, La.App., 189 So.2d 454 and held that the said Housing Authority by virtue of the aforementioned Constitutional amendment, no longer enjoys immunity “from liability for interest and court costs”. The award to the plaintiffs in the instant matter of legal interest as prayed for was proper and the same should also be affirmed.
*449 Accordingly, for the above and foregoing reasons the judgment of the district court in the above entitled and numbered cause in favor of Louisiana Paving Company, Inc. is hereby affirmed.
Affirmed.

. The question of assessing a portion of the costs against plaintiff was not raised on appeal.

. Should be Item Number 2-6-2x.