**RADCLIFF MATERIALS, INC.,**
Plaintiff-Appellee,

v.

**GAINES P. WILSON & SON, INC.,** Defendant-Third Party Plaintiff-Appellee, Cross Appellant,

v.

**STATE OF LOUISIANA** through the Department of Highways, Third Party Defendant-Appellant-Cross Appellee.

No. 71–1584.

United States Court of Appeals,
Fifth Circuit.

Dec. 3, 1971.

Rehearing Denied Dec. 30, 1971.

Jesse S. Guillot, New Orleans, La., Marshall W. Wroten, Philip K. Jones, Norman L. Sisson, Baton Rouge, La., for plaintiff-appellee.

Frank J. Peragine, A. R. Christovich, Jr., New Orleans, La., J. Manson Murray, Mobile, Ala., Christovich & Kearney, New Orleans, La., for Gaines P. Wilson & Son, Inc., defendant-third party plaintiff, appellee and cross appellant; Vickers, Riis, Murray & Curran, Mobile, Ala., and Deutsch, Kerrigan & Stiles, New Orleans, La., of counsel.

Before BELL, AINSWORTH, and GODBOLD, Circuit Judges.

BELL, Circuit Judge:

This appeal by the State of Louisiana Highway Department is taken from a determination of ultimate liability against the state in favor of Radcliff

Materials, Inc. for additional compensation for increased quantities of work ordered by the state under a construction contract. We affirm.

In 1959, Radcliff's predecessor, a subcontractor, entered a contract to furnish base material for highway construction to the predecessor of Gaines P. Wilson, Inc., a general contractor with the State of Louisiana. The agreement between the general contractor and the state incorporated the Highway Department's *Standard Specifications for Roads and Bridges* (July 1955), which sets out the procedure for effecting increased quantities of work under the contract and states the measure of payment for such work.[1]

Due to plan changes during the course of construction, the subcontractor was called upon to furnish more base material than required in the original contract. In 1963, after receipt of Plan Change 20, the subcontractor determined that the increased work would result in an over-run of "more than 25 per cent of the whole contract, measured in terms of the sum of the extension of quanitites at the unit prices. . . " *Standard Specifications* § 4.03, supra. A demand was then made upon the general contractor to negotiate a supplemental agreement as provided in the *Standard Specifications,* § 4.03 supra.

The state, however, refused to negotiate based upon its contention that no

---

[1]. 4.03 *Increased or Decreased Quantities of Work:*

The engineer may, without notice to the sureties on the contractor's bond, make such alterations in the quantities or in the nature of the work which he may consider necessary or desirable to complete fully the work as contemplated, provided such alterations do not change the original quantities of the contract items more than the limiting percentage of cost change set forth below. Such alteration shall not be considered as a waiver of any condition of the contract nor to invalidate any of the provisions thereof.

If the quantities of work specified in the contract are increased or decreased more than 25 per cent of the whole contract, measured in terms of the sum of the extension of quantities at the unit prices, a supplemental agreement to the contract may be executed between the department and the contractor, upon demand of either party, and when a supplemental agreement is executed, the consent of the contractor's surety to such supplement shall be obtained.

4.04 *Extra Work:*

Extra work shall be any work ordered by the engineer which is not covered by any item in the contract. Extra work shall be performed by the contractor under a "supplemental agreement," "extra work order," or as "force account," and will be measured and paid for as specified in Article 9.04, Division I.

Under no circumstances shall alterations of plans or of the nature of the work involve work beyond the termini of the proposed construction as shown on the plans except as may be necessary to satisfactorily complete the project.

9.03 *Increased or Decreased Quantities:*

When alterations in plans or quantities of work not requiring "supplemental agreement," as hereinbefore provided, are ordered and performed and when such alterations result in increase or decrease of the quantity of work performed, the contract unit price for the actual quantities of work done and no allowance will be made for anticipated profits. Increased or decreased quantities of work involving "supplemental agreements," as set forth in Article 4.03, shall be paid for as stipulated in such agreements.

9.04 *Extra and Force Account Work:*

Extra work ordered and accepted shall be paid for under a "supplemental agreement", "extra work order" or as "force account." If the parties at interest are unable to reach an agreement as to the unit prices to be used as the basis of a "supplemental agreement" or "extra work order," the engineer may order the contractor to do the work on a force account basis. Extra work not covered by a "supplemental agreement," "extra work order" or by a written "force account" order will not be paid for.

\* \* \* \* \*

For all materials accepted by the engineer and used, the contractor shall receive the actual cost of such material, including transportation charges to which cost shall be added a sum equal to 10 per cent thereof.

supplemental agreement was authorized until the entire contract as a whole had in fact exceeded the 25 per cent limitation. The subcontractor was notified and agreed to continue to furnish the base material to the general contractor, but without waiver of its demand for an increased price.

In 1964, the Highway Department indicated that the over-run had exceeded 25 per cent, and advised the general contractor that it was free to seek a supplemental agreement. However, the Highway Department refused to enter a supplemental agreement or negotiate a new price with the general contractor who thereafter refused to pay the higher price demanded by Radcliff. This action was then brought against the general contractor, and the state was impleaded as a third party defendant.[2]

The primary issue below and on this appeal involves the proper interpretation of the Louisiana Highway Department's *Standard Specifications for Roads and Bridges* (July 1955), Sections 4.03, 4.04 and 9.03, 9.04. Appellant argues that under Section 4.03, a price higher than the unit price may be paid only after the contract has exceeded 25 per cent, and then only as to materials in excess of 25 per cent of the whole contract and pursuant to a supplemental agreement. If no agreement is reached, then the state argues that the contractor must supply increased quantities of materials up to 25 per cent of the whole contract at the unit price. Once the percentage limitation is reached, the contractor is then free to stop delivery. In any event the state argues, Section 9.04 relating to force account work has no applicability to increased quantities, but only to "extra work" within the meaning of Section 4.04.

Radcliff, on the other hand, contends that it was free to seek a supplemental agreement after receipt of Plan Change 20, which indicated that the contract would exceed 25 per cent, based upon an extension of quantities at the unit prices. Having made a demand for a supplemental agreement, Radcliff maintains that the Highway Department should have either negotiated the supplemental agreement under Section 4.03 or paid for additional quantities on a force account basis as provided in Section 9.04. In essence, the argument is that under Section 4.03, read in connection with Sections 9.03 and 9.04, the Highway Department was not free to act capriciously in refusing to negotiate a supplemental agreement and then demand delivery of increased quantities at the unit price.

■ At the outset, we note that the *Standard Specifications* in question are lacking in clarity and either interpretation would be reasonable in light of the inherent ambiguity of the applicable sections. The specifications were prepared by the state. Under the law of Louisiana, it is necessary to interpret these specifications in such a way as to resolve any ambiguity against the state. La. Civil Code § 1957; Louisiana Paving Co. v. Louisiana Dept. of Highways, 205 So.2d 445 (La.App.1967). It follows that we accept the interpretation urged by the appellee subcontractor.

■ We therefore hold that the district court was correct in its conclusion that the Highway Department was not free to act capriciously in refusing to negotiate a supplemental agreement. Upon receipt of Plan Change 20, Radcliff was able to clearly show that the contract would exceed 25 per cent, based upon an extension of quantities at the

2. The district court found as a matter of law that the parties had incorporated the *Standard Specifications* into the contract between the general contractor and the subcontractor. Accordingly, the subcontractor had the right to demand and negotiate a supplemental agreement with the Highway Department through its prime contractor. In effect, the subcontractor was placed in the shoes of the general contractor regarding its rights under the contract. See Frommeyer v. L. & R. Construction Co., 261 F.2d 879 (3rd Cir. 1958); Kesk, Inc. v. National Union Indemnity Company, 224 F.Supp. 766 (W.D.La.1963).

unit prices. Under the interpretation we adopt, this plan change served a dual purpose. First, it entitled Radcliff to seek a supplemental agreement. Second, since it was enforceable by the state even in the absence of an agreement and since no agreement was entered, it constituted a written force account order within the meaning of Section 9.04. Thus, Radcliff was entitled to the award as made by the district court for additional compensation on a force account basis.

■ A final issue involves the district court's inclusion of overhead as part of Radcliff's cost in determining its compensation under a force account. Again, the *Standard Specifications* fail to clearly define the term "cost" as used in Section 9.04. However, the award by the district court was determined in accordance with generally accepted accounting principles and is consistent with a reasonable interpretation of Section 9.04. We therefore hold that the district court's inclusion of overhead in cost under Section 9.04 was not error.

Affirmed.